### Application of MILLER, Alien Property Custodian.

### Appeal of SCHWAB et al.

(Circuit Court of Appeals, Second Circuit.   March 13, 1923.)

No. 194.

1. War ⊙═12—Demand af Alien Property Custodian properly made on executors. for legacy becoming due to alien enemy legatees after peace resolution.

Under Surrogate's Court Act N. Y. § 202, requiring that all personal property of an estate, including debts, must pass to the executors or administrators and be administered according to law, the executors of an estate were the proper parties on whom the Alien Property Custodian should make demand in . order to seize the rights of alien enemies in debts due to the estate and installments of interest on such debts which accrued subsequent to July 2, 1921, the date of the joint resolution of Congress declaring that a state of war no longer existed between Germany and this country.

2. Wills ⊙═630(9)—Postponement of time of payment of legacies does not prevent legatees from having vested interest.

Where testator's will permitted a corporation, in which he was largely interested, to withhold payment for his interest for a period of two years, and to withhold payment of one-half of such sum for a further period of eight years, on payment to the legatees of interest at the

---
⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

rate of 5 per cent. per annum, *held* that, though the time of payment was postponed, the legacies to be paid were definite and certain, and not dependent on any contingency, and the legatees had vested interests in such estate.

**3. War ⬤═►12—Alien Property Custodian entitled to demand vested legacies, though not payable until after peace resolution.**

Under Trading with the Enemy Act, § 7, as amended by Act Nov. 4, 1918, § 1 (Comp. St. Ann. Supp. 1919, § 3115½d), the Alien Property Custodian was entitled to demand payment to him of legacies which had vested in alien enemy legatees prior to the peace resolution of July 2, 1921, though the payment of moneys to such legatees by operation of the will and its provisions was postponed until subsequent to that date.

**4. War ⬤═►12—Alien Property Custodian's demand effective as of date made to vest title to property in him.**

A valid demand made by the Alien Property Custodian operated at once as a seizure of the property of alien enemies, notwithstanding the failure of executors or administrators in whose hands it was possessed to comply with the demand, and the rights of the Custodian in such property must be adjudged as of the date when the demands were made.

**5. War ⬤═►12—Peace resolution did not invalidate property seizures by Alien Property Custodian.**

Joint Resolution July 2, 1921, declaring the state of war theretofore existing between Germany and the United States to be ended, did not invalidate seizures theretofore made by the Alien Property Custodian, but under section 5 expressly declared that all such property shall be retained by the United States.

**6. War ⬤═►12—Peace resolution not entitling alien enemies to payment of legacies theretofore seized by Custodian.**

A valid seizure of property of alien enemies having been made by demand made on the executors of a will of which the aliens were legatees, the fact that installments of interest money came into the possession of the executors for distribution to the legatees subsequent to the enactment of Joint Resolution July 2, 1921, terminating the state of war between Germany and the United States, did not affect the right of the Custodian to the property involved, since at the time of the Custodian's demand it then became and thereafter remained the duty of the executors to pay over to him whatever money belonging to the alien enemy legatees they had in their hands, or which came into their hands thereafter, as against the contention that after the peace resolution the money was payable, not to alien enemies, but to citizens of a friendly power.

Appeal from the District Court of the United States for the Southern District of New York.

Proceeding at law by Thomas W. Miller, Alien Property Custodian, to require Gustav Schwab and another, as executors, to deliver to him all the moneys due certain residuary legatees of the estate of Herman C. Von Post, deceased. From a decree as prayed, the executors appeal. Affirmed.

Choate, Larocque & Mitchell, of New York City (Joseph Larocque and Nelson Shipman, both of New York City, of counsel), for appellants.

William Hayward, U. S. Atty., of New York City (Duer & Taylor and George Winship Taylor, all of New York City, of counsel), for Alien Property Custodian.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

⬤═►For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROGERS, Circuit Judge. This is an appeal from an order entered in the District Court for the Southern District of New York on November 10, 1922, which adjudged and decreed that Gustav Schwab and William Siegel, executors of the estate of Herman C. Von Post, deceased, pay and deliver to Thomas W. Miller, as Alien Property Custodian of the United States, the sum of $14,064.08, due and owing to the persons named in the said order, in the amounts set opposite their respective names, with the interest accrued thereon, in compliance with the demands which the Custodian issued and served upon the executors in accordance with the provisions of the act of Congress known as the Trading with the Enemy Act.

The Act approved October 6, 1917 (40 Stat. pt. 1, c. 106, p. 415 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½cc]), provided for the transfer or delivery to the Alien Property Custodian of property held for or on account of an alien enemy if the President so required; and by an act approved on November 4, 1918, the act of 1917 was amended, and express provision was made giving to the Custodian the right to seize property which the President had determined belonged to an alien enemy and had required to be paid over (40 Stat. pt. 1, c. 201, p. 1020 [Comp. St. Ann. Supp. 1919, § 3115½d]).

It appears that on October 10, 1913, Herman C. Von Post died while a resident of the city, county, and state of New York, and left a will which was duly admitted to probate in the Surrogate's Court for New York County on January 15, 1914. Letters testamentary under the will were duly issued to Gustav Schwab and William Siegel, each of whom resides in the city of New York. The executors entered upon the administration of the estate, and on February 10, 1921, filed an account in the Surrogate's Court, setting out their acts as executors up to January 3, 1921, which was settled by a decree of that court dated June 27, 1921. The seventh and eighth paragraphs of the will read as follows:

"Seventh. I give and bequeath to the same persons as are made my residuary legatees in the next succeeding clause of this my will, in the proportions, therein specified, whatever sum of money may be due me from the firm of Oelrichs & Company at my death, as a copartner in said firm or otherwise, subject however to the right of said firm, or of any firm succeeding to its business in which my said nephew Gustav H. Schwab or his son Gustav Schwab, Jr., or either of the nephews of said Gustav H. Schwab is a partner, to retain said sum for a period of two years from the date of my decease, paying interest thereon to my said legatees at the rate of five per centum per annum, at the end of which period I direct said firm to pay over one-half of said sum to my said legatees; and subject further, to the right of said firm, or such succeeding firm with the approval of my executors, to be given within two years from the date of my decease, to retain at its option the remaining one-half of said sum for a further definite period not exceeding eight years, paying interest thereon to my said legatees at the rate above specified, at the end of which period, or at the end of said period of two years from my decease if my executors shall not by that time have given their approval as aforesaid, I direct said firm to pay over said remaining one-half to my said legatees; the said firm or succeeding firm to have the right, however, at its option at any time after my death, to pay off and discharge the whole or any part of said indebtedness; and subject further, and I hereby direct, that my executors shall determine the amount due me at my death from said firm, and that their determination shall be final and conclusive upon my said legatees and all per-

sons interested in my estate, without any right on the part of said legatees or persons to examine into the books or records of said firm or such succeeding firm or to require any statement from either of said firms in regard to its business or affairs, or any statement from my executors other than a memorandum of the amount so due as determined by them.

"Eighth. All the rest, residue and remainder of my property and estate, real and personal, and wherever situated, which at the time of my decease I may be seized or possessed of, or in or to which I may then have any right, title or estate or interest, including the one-third of the net proceeds of the house and lot in Fifty-Seventh street, referred to in a preceding clause of this my will, I direct to be divided by my executors into as many equal shares or parts as shall be equal to the number of nephews and nieces who shall survive me, and who shall have died before me leaving lineal descendants who shall survive me, these nephews and nieces being the children of my deceased sisters, Catherine Elizabeth Schwab, late of New York City, Henrietta Margareta Schwab, late of the city of Stuttgart, Germany, Clementine Schrader, late of the city of Bielefeld, Germany, and Emily Maria Pauli, late of the city of Bremen, Germany; and I give, devise and bequeath one of said shares to each of said nephews and nieces who shall survive me and one of said shares to the lineal descendants collectively who may survive me of each of said nephews and nieces who may have died before me, such descendants in each case to take equally, per stirpes and not per capita."

The amount due the decedent representing his share as a partner in the firm of Oelrichs & Co. at the time of his death was found to be $1,286,607.03. Under the seventh paragraph of the will above set forth the firm of Oelrichs & Co. was entitled to retain the whole of said sum for a period of two years from the decedent's death, to wit, until October 10, 1915, paying 5 per cent. interest thereon. Prior to that time, however, and by July 14, 1915, the firm had paid to the executors the sum of $645,807.03, leaving a balance due of $640,800, which balance the firm at that time, with the approval of the executors and in accordance with the terms of the will, elected to retain for the further period of eight years and until October 10, 1923. And since July 14, 1915, the firm has paid to the executors on the said sum of $640,800 interest semiannually at the rate of 5 per cent. per annum on the 1st days of January and July of each year.

On January 18, 1918, the executors filed with the Alien Property Custodian a report as required by the Trading with the Enemy Act, wherein they reported the names and addresses of the persons listed in the margin,[1] stating that they were legatees under the will and that they were believed to be enemies residing in Germany. The persons so named were all nephews and nieces or descendants of deceased

[1] "(1) Estate of Anna S. E. Lachmann (deceased legatee), care of Wilhelm H. Schrader, 28 Wachmann Strasse, Bremen, Germany; (2) estate of Ludwig Schwab (deceased legatee), 36 Azenberg Strasse, Stuttgart, Germany; Gustav F. Schwab, Karl G. Schwab, Hermann C. Schwab, Estate of Richard Schwab, 36 Azenberg Strasse, Stuttgart, Germany; Emilie H. Weitbrecht, 61 Lenzhalde Strasse, Stuttgart, Germany; (3) Theodore H. Plieninger, Elizabeth M. Plieninger, Hanna C. Plieninger, 1 Johannes Strasse, Stuttgart, Germany; (4) Rudolf F. A. Schrader, Goethe Strasse, Johannistal, Bielefeld, Germany; Emily M. Seiler, 6 Mozart Strasse, Bielefeld, Germany; Gustav B. Schrader, Herman Strasse, Bielefeld, Germany; Wilhelm H. Schrader, 28 Wachmann Strasse, Bremen, Germany; Friedrich Paul Schrader, Kiel, Germany; Sophie H. Noltenius, 55 Kolhoeker Strasse, Bremen, Germany; Clementine S. C. Kulenkampff, 19 Kolhoeker Strasse, Bremen, Germany; Estate of A. S. Elizabeth Goessling (deceased legatee), Brackwade, Germany."

nephews or nieces of the testator Von Post, surviving at the time of his death and entitled to share as residuary legatees under the seventh and eighth paragraphs of the will. Thereafter and on November 23, 1918, the Custodian determined that the persons listed in the margin [2] were enemies not holding a license granted by the President, and that each of said enemies had a certain right, title, and interest in the estate of the deceased, Von Post. He thereupon issued 14 demands, one for each of the said enemies, and served them upon the executors on November 30, 1918, requiring the latter to pay over to him the interest of the said enemies in and to the said estate.

Thereafter, on June 26, 1919, the Custodian determined that the following additional persons, listed also in the margin,[3] were enemies not holding a license granted by the President, and that each had a certain right, title, and interest in the estate of Von Post, and he demanded that their respective interests be paid over to him. Thereafter the executors from time to time paid over to the Custodian various sums of money representing the interests as residuary legatees of the said enemies up to and including July 1, 1921.

However, on January 1, 1922, the executors reported to the Custodian that they had received from Oelrichs & Co. the sum of $16,020.20, representing a semiannual payment of interest from July 1 to December 31, 1921, on the $640,800 retained by that firm. The executors further reported that out of said installment of interest, after deducting commissions and expenses, the sum of $7,032.04 was due to the said enemies. This amount the executors refused to pay over to the Custodian for reasons hereinafter referred to. And on July 1, 1922, the executors reported to the Custodian that they had received from Oelrichs & Co. a further sum of $16,020, representing the semiannual payment of interest due from January 1 to June 30, 1922, on the amount retained by the firm. The executors further reported that out of said installment of interest, after deducting commissions and expenses, the sum of $7,032.04 was due to the said enemies whose interests had been demanded by the Custodian as already set forth. The executors have also refused to pay this amount over to the Custodian.

Because of these refusals of the executors to pay over these amounts of money, which they admit having in their hands, the Custodian filed his petition in the District Court, and prayed that court to enter such orders and issue such process as might be necessary to compel the executors to turn over such property to him in accordance with the Trading with the Enemy Act. The District Court having entered the

[2] "Gustav F. Schwab, Karl G. Schwab, Hermann C. Schwab, Emilie H. Weitbrecht, Theodore H. Plieninger, Elizabeth M. Plieninger, Hanna C. Plieninger, Rudolf F. A. Schrader, Emily M. Seiler, Gustav B. Schrader, Wilhelm H. Schrader, Friedrich Paul Schrader, Sophie H. Noltenius, and Clementine S. C. Kulenkampff."

[3] "The heirs at law next of kin and legatees (names unknown), residing in Germany, of Anna S. E. Lachmann, deceased; the heirs at law next of kin and legatees (names unknown) of Ludwig Schwab, deceased; the heirs at law and next of kin and legatees of Richard Schwab, deceased, and the heirs at law next of kin and legatees of A. S. Elizabeth Goessling, deceased."

order prayed for, the executors have appealed to this court. They contend that the Custodian's demands did not and could not reach the shares of enemy legatees in a debt due an estate or in installments of interest thereon not payable until after July 2, 1921, inasmuch as on that date they had all ceased to be "enemies," and had become citizens of a friendly power.

The Joint Resolution of Congress, which became effective on July 2, 1921 (42 Stat. 105), declared:

"That the state of war declared to exist between the Imperial German government and the United States of America by the joint resolution of Congress approved April 6, 1917, is hereby declared at an end."

The executors had paid over to the Custodian all interest received by them for the alien enemies up to and including the 1st day of July, 1921, but have withheld all interest which has reached their hands since that time, viz. on January 1, 1922, and on July 1, 1922.

The contention of the Custodian is that by the demands he served on the executors on November 30, 1918, and on July 8, 1919, he effectually seized interest not then in the hands of the executors, and which did not accrue or become due until after the adoption of the Joint Resolution of July 2, 1921; and this contention the executors deny and they assert that the Trading with the Enemy Act has no application to debts which matured subsequent to July 2, 1922, or to installments of interest on such debts which accrued subsequent to said date.

This raises a very interesting and important question, and so far as we are aware one upon which there is an entire absence of authority. While the District Court has sustained the contention of the Custodian, no opinion was filed. But, although the facts presented in this case are different from those of any other which has come to our attention, the principle which is applicable and the answer which must be given to the question raised are, as it seems to us, not involved in uncertainty.

[1] Before, however, passing upon the merits of the question presented, we shall refer to a technical objection which has been interposed. It is argued that the demands made by the Custodian upon the executors of the estate for a transfer to him of the interest of the legatees under the will was ineffective, in that it was served upon the executors; whereas, it should have been served upon Oelrichs & Co., who are bound to pay interest to the legatees, and it is added that at the time the demands were made there was in the hands of the executors nothing which they could transfer or which could be seized by the Custodian. We are cited to no authority in support of this contention, and it is not justified by legal reason. The payment of the interest could not be made by Oelrichs & Co. direct to the legatees, but had to be made to the executors and through them to the legatees. The legatees could not maintain a suit against Oelrichs & Co. for the recovery of their interest but such a suit would have to be brought by the executors. Latting v. Latting, 4 Sandf. Ch. (N. Y.) 31; Jenkins v. Freyer, 4 Paige, Ch. (N. Y.) 47; Woodin v. Bagley, 13 Wend. (N. Y.) 453.

The Surrogate's Court Act, of New York (Laws 1920, c. 928), § 202, requires that in that state all the personal property of an estate, including debts, must pass to the executors or administrators and be ad-

ministered according to law. Oelrichs & Co., as it was plainly their duty to do, have been paying the interest as it became due to the executors. There is no doubt that the executors, and not the legatees or Oelrichs & Co., were the proper parties upon whom the demands were to be served.

[2] It is clear that upon the death of Mr. Von Post the legatees immediately took vested interests in his estate under the seventh and eighth paragraphs of his will hereinbefore set forth. Although the time of payment was postponed, the legacies to be paid were definite and certain and not dependent on any contingency. Under the seventh paragraph, which relates to the money due to him from the firm of Oelrichs & Co. the testator had provided that the firm might retain such money for a period of two years from the date of his decease when one-half of said sum was to be paid by the firm to the legatees; and it was further provided that the firm or one succeeding it might, subject to the executors' approval, retain at its option the remaining one-half of the sum due for a further definite period of 8 years, and at the end of that period, if the option was exercised the firm was directed to pay to the legatees the remainder of the balance retained. But as respects both the half retained for two years and the remainder, if retained for the further period of 8 years, the firm was directed to pay interest to the legatees at the rate of 5 per cent. per annum. This provision as to the payment of interest was vital. If it had not been for that, there would be ground for insisting that the legacies did not vest at the time of the testator's death. In Steinway v. Steinway, 163 N. Y. 183, 57 N. E. 312, it was held that "the payment of the whole interest or income of the legacy pending the delay in payment of the principal is essential to the immediate vesting of the legacy." And see Matter of Seaman, 147 N. Y. 69, 74, 41 N. E. 401. The legatees, in the instant case therefore, had vested interests in the estate of Mr. Von Post and it is these vested interests which the Custodian is attempting to get into his possession.

[3] The amendment of November 4, 1918, to the Trading with the Enemy Act, required to be conveyed, transferred, assigned, delivered, or paid over to the Custodian, any money or other property including patents, copyrights, applications therefor, and rights to apply for the same, trade-marks, choses in action, and rights and claims of every character and description owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of, any enemy or ally of an enemy not holding a license. 40 Stat. pt. 1, c. 201, p. 1020 (Comp. St. Ann. Supp. 1919, § 3115½d). The language of the act is most comprehensive. Under it the Custodian is entitled to demand "choses in action and rights and claims of every character and description owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of" any enemy not holding a license from the President. It is admitted that the legatees were alien enemies at the time the Custodian made his demands. It is also admitted that they held no license from the President. It cannot be denied that the legatees under the will acquired by the death of Von Post on October 10, 1913, an interest in his estate. That interest is indisput-

ably comprehended in the language of the act which covers "claims of every character and description." These interests of the legatees the Custodian was entitled to demand and to seize.

This brings us to a consideration of the demands made by the Custodian upon the executors. These demands, we have seen, were made in November, 1918, and July, 1919. Each of the demands after stating that it had been determined that the person named therein was an enemy (not holding a license granted by the President) and that he had a certain right, title, and interest in and to the estate of Herman C. Von Post, deceased, continued as follows:

"I, as Alien Property Custodian, hereby require that every right, title, and interest of said enemy in and to the estate above described, including every power and authority thereover, shall be by you conveyed, transferred, assigned, delivered, and paid over to me as Alien Property Custodian, to be by me held, administered, and accounted for as provided by law, and that any money or property now or hereafter held by you which the enemy may at any time or times, now or hereafter, be entitled to receive either upon or without demand, shall at such time or times be conveyed, transferred, assigned, delivered, and paid over to me, as Alien Property Custodian."

[4] The effect of the demands made, even though they have not been complied with by the executors, is not involved in any doubt or uncertainty. This court had occasion to consider the effect of such uncomplied with demands in Re Miller, 281 Fed. 764. We held in that case that a demand validly made by the Custodian operated at once as a seizure of the property demanded, notwithstanding the failure of those upon whom the demand was made to comply with its terms; and we also held in that case that the subsequent proceeding in the District Court which the Custodian is compelled to bring in cases in which a demand is not complied with is not a proceeding to make a seizure, but only one to enforce a seizure which was already effected by the demand. That being so, the rights of the Custodian to the possession of the property included in the demands must be adjudged as of the date when the demands are made; and in the instant case at the time of the demands the war between the United States and Germany was still being carried on, and the Trading with the Enemy Act was in full operation and effect.

[5] The Joint Resolution of July 2, 1921, to which we have before referred, and which is so much relied upon by the appellants, put an end to the war between the two countries, but it did not have the effect of invalidating seizures already made by the Custodian. Indeed, section 5 of the resolution expressly declares:

"All property * * * of all German nationals which was, on April 6, 1917, in or has since that date come into the possession or under control of, or has been the subject of a demand by the United States of America or of any of its officers, agents, or employees, from any source or by any agency whatever, * * * shall be retained by the United States of America and no disposition thereof made, except as shall have been heretofore or specifically hereafter shall be provided by law. * * * "

And no provision by law subsequently made, which affects the question now before the court, has been brought to our attention.

Moreover, we may call attention to the fact that this resolution of

July 2 is recited at length in the Peace Treaty signed by the United States and Germany, and article 1 of the treaty provides as follows:

"Germany undertakes to accord to the United States, and the United States shall have and enjoy all the rights, privileges, indemnities, reparations or advantages specified in the aforesaid Joint Resolution of the Congress of the United States of July 2, 1921."

[6] It is true that neither installment of interest herein involved, either that received on January 1, 1922, or that received on July 1, 1922, came into the possession of the executors or under their control until after the adoption of the Joint Resolution. It is claimed therefore, that when the installments were paid to the executors they belonged, not to enemies, but to the citizens of a friendly power. But we are not required in this proceeding to determine the right which the legatees may have to reclaim from the Custodian the property which he has seized. All 'that we can now determine is: What did the Custodian seize? The Trading with the Enemy Act makes full and adequate provision for the settlement of all controversies which may arise concerning rights in the property so seized. The important and controlling fact is that at the time the Custodian made his demands he thereby seized whatever interest the alien legatees possessed under the will, and that it then became the duty of the executors to turn over to the Custodian whatever money they had in their hands at the time the demand was made, or which came into their hands at any time thereafter, and which they received for the legatees named in the demands which the Custodian served upon them in November, 1918, or in July, 1919.

The order is affirmed.