## In re SUTHERLAND, Alien Property Custodian.

Circuit Court of Appeals, Second Circuit. January 9, 1928.

No. 89.

1. War ⬌12—Alien Property Custodian's determination that stock is owned by alien enemy is sufficiently final whether right or wrong, to require cancellation of stock and issuance of certificates in lieu thereof to custodian (Trading with the Enemy Act, § 7, subds. [a], [c], [d]; being Comp. St. § 3115½d, and section 9, as amended by·Act March 4, 1923 [Comp. St. § 3115½e]).

Alien Property Custodian's determination. under Trading with the Enemy Act, § 7, subds. [a], [c], [d], being Comp. St. § 3115½d, that stock is owned by alien enemy, is sufficiently final to require corporation to cancel such stock and issue certificates in lieu thereof to custodian, whether decision is right or wrong; all rights and equities of corporation remaining open for future proceedings under section 9, as amended by Act March 4, 1923 (Comp. St. § 3115½e).

2. Corporations ⬌139—Corporation stock is presumed owned by registered owner, and whole beneficial interest by one for whom held by such owner.

Corporation stock is presumed to be owned by registered owner, and, where stated to be held by such owner for another, latter is presumed to own the whole beneficial interest.

3. War ⬌12—Corporation cannot retain alien enemy's stock after determination of ownership, and demand for delivery, by Alien Property Custodian, though not estopped to test validity of issuance in proceeding for allowance of claims after delivery (Trading with the Enemy Act, § 9, as amended by Act March 4, 1923 [Comp. St. § 3115½e], and § 7, subds. [a], [c], [d], being Comp. St. § 3115½d).

While corporation is not estopped to test validity or lawful issue of stock to alien enemy, in proceeding under Trading with the Enemy Act, § 9, as amended by Act March 4, 1923

(Comp. St. § 3115½e), for allowance of claims to property delivered to Alien Property Custodian, corporation reporting such stock cannot retain it after determination of such ownership, and demand for its delivery, by such Custodian under § 7, subds. (a), (c), (d), being Comp. St. § 3115½d.

**4. War ⊜12—Property owned by alien enemy must be transferred to Alien Property Custodian immediately on demand (Trading with the Enemy Act, § 7, subds. [a], [c], [d], and amendment to § 7, subd. [c], Act Nov. 4, 1918 [Comp. St. § 3115½d]).**

Property owned by alien enemy must be transferred to Alien Property Custodian immediately on demand therefor, under Trading with the. Enemy Act, § 7, subds. (a), (c), (d), being Comp. St. § 3115½d, latter's power to receive such property, under amendment to section 7, subd. (c), by Act Nov. 4, 1918, being granted as legitimate means effectively to prosecute war.

**5. War ⊜12—Alien Property Custodian's right to seize enemy-acquired property ceased on declaration of peace (Trading with the Enemy Act, § 7, subd. [c], as amended by Act Nov. 4, 1918 [Comp. St. § 3115½d]; Joint Resolution July 2, 1921 [42 Stat. 105]).**

Alien Property Custodian's right to seize enemy-acquired property, under Trading with the Enemy Act, § 7, subd. (c), as amended by Act Nov. 4, 1918 (Comp. St. § 3115½d) ceased on declaration of peace with Germany by congressional resolution of July 2, 1921 (42 Stat. 105).

**6. Corporations ⊜152—Dividends are not due until earned and declared by corporation directors.**

Dividends on corporation's stock cannot become due, unless and until they are earned and declared by directors of corporation.

**7. Corporations ⊜155(5)—Stockholder's remedy for refusal to pay dividends is. action at law therefor.**

Remedy of stockholder for corporation's refusal to pay dividends is right of action at law for their collection.

**8. Corporations ⊜155(2)—Corporation declaring and segregating dividend holds amount as trustee for stockholder, who has vested interest in corporate profits.**

A stockholder has a vested interest in corporate profits by virtue of his stock ownership, and, when dividend is declared and amount thereof segregated, such amount is held by corporation as trustee for stockholder.

**9. War ⊜12—Alien Property Custodian has all rights of stockholder after issuance of certificate in lieu of enemy-owned stock, but cannot sue for dividends declared after demand therefor (Trading with the Enemy Act, § 7, subds. [a], [c], [d], being Comp. St.. § 3115½d; § 17 [Comp. St. § 3115½i]).**

Alien Property Custodian has all rights of corporate stockholder after issuance of certificate in lieu of enemy-owned stock, canceled on corporation's books under Trading with the Enemy Act, § 7, subds. (a), (c), (d), being Comp. St. § 3115½d, and may call for payment of dividends, but cannot invoke provisions of section 17 (Comp. St. § 3115½i) to require payment of dividends declared after demand therefor.

**10. War ⊜12—Corporation pays dividends to alien stockholder at its peril after seizure of stock by Alien Property Custodian, but there is no trust fund demandable by latter until dividends have been segregated and set apart (Trading with the Enemy Act, § 7, subds. [a], [c], [d]; § 7, subd. [c], as amended by Act Nov. 4, 1918 [Comp. St. § 3115½d]).**

After seizure of enemy-owned corporation stock by Alien Property Custodian, under Trading with the Enemy Act, § 7, subd. (c), as amended by Act Nov. 4, 1918 (Comp. St. § 3115½d), corporation would pay future dividends to alien at its peril, but there is no trust fund, which Custodian, standing in stockholder's place, may demand under section 7, subds. (a), (c), (d), until dividends have been segregated and set apart as such.

Appeal from the District Court of the United States for the Western District of New York.

Application under Trading with the Enemy Act, § 17 (Comp. St. § 3115½i), by Howard Sutherland, as Alien Property Custodian, for an order directing the Eastman Kodak Company and the Lincoln-Alliance Bank to cancel on the former's books certain shares of its common stock and issue and deliver new certificates to applicant, together with dividends declared and payable, and directing the Security Trust Company to countersign such certificates as registrar of such stock. From a decree for applicant (21 F.[2d] 667), the Kodak Company appeals. Modified in part, and affirmed in part.

Hubbell, Taylor, Goodwin & Moser, of Rochester, N. Y. (John W. Davis, of New York City, and Clarence P. Moser and Herbert R. Reif, both of Rochester, N. Y., of counsel), for appellant.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y., and James M. Beck and A. Henry Walter, Sp. Counsel, both of Washington, D. C., for Alien Property Custodian.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. The decree entered below directed the Eastman Kodak Company and the Lincoln-Alliance Bank to cancel shares of common stock of the former, and to issue and deliver to the Alien Property Custodian new certificates in lieu thereof, and directed the Security Trust Company of Rochester to countersign and register said certificates, and further ordered that the Alien Property Custodian recover from the appellant all dividends declared on the stock since October 1, 1925.

On April 1, 1918, the Vereinigte Fabriken Photographischer Papiere, of Dresden, Germany, appeared on the books of the appellant as a stockholder of 2,845 shares of its common stock. This it obtained—1,134 shares in 1903, and 1,711 shares in 1904—pursuant to a contract made February 16, 1903. This contract recited that, in consideration for these shares of stock, the appellant, as representative or assignee of the American Aristotype Company, received the right to sell and manufacture collodion papers of the Christensen formula in the territory of Great Britain, France, Spain, and Portugal; it appearing that the Dresden Company had an established business in these four countries. The purchase of the Great Britain business, after that of the France, Spain, and Portugal business, explains the two installments and separate issuance of shares of the common stock. The contract provided that, during the first 15 years from the date of the issue of the shares, no sale thereof was to be made by the Dresden Company without the written consent of the Eastman Kodak Company. The shares of stock were issued subject to this restriction, and to that end a notation was placed on the certificates of stock reading as follows:

"This certificate is issued subject to the provisions of a contract dated February 16, 1903, between the Vereinigte Fabriken Photographischer Papiere, of Dresden, Carl Christensen, and the Eastman Kodak Company, of New Jersey, and neither this certificate nor any of the shares represented by it are assignable, excepting in accordance with the provisions of said contract."

After the expiration of 15 years the Dresden Company was entitled to sell, provided there shall be first transferred to the appellant or its nominee an amount, at par, equal to any reserved funds that the appellant may have made on these shares of stock from April 1, 1905, the amount not to exceed one-third of the shares delivered to the Dresden Company. The appellant agreed not to sell in any countries of Europe, excepting the four mentioned, and further not to communicate any of the trade secrets or processes relating to the manufacture of collodion paper to any one. The Dresden Company agreed not to manufacture or sell collodion paper in Great Britain, France, Spain, Portugal, or North America, if the appellant purchased the exclusive right to manufacture and sell in the countries mentioned. It agreed, as well, not to communicate any of the trade secrets or processes relative to the manufacture of collodion papers to any person in North America. These restrictive covenants were confined to collodion photographic printing-out papers. The shares of stock were issued and delivered to the Vereinigte Fabriken Photographischer Papiere, of Dresden, Germany, and registered in its name on the books of the appellant. In April, 1922, the holder of each share of common stock of $100 par value became entitled to 10 shares of no par value, and thereupon these shares were increased to 28,450. In each year following the delivery of the stock—1903/1904—up to and including July 1, 1925, the appellant paid, either to the Dresden Company or the Alien Property Custodian, each and every dividend declared.

This application is under section 17 of the Trading with the Enemy Act (Comp. St. § 3115½j). It grants jurisdiction and power to the District Court to require delivery of property seized when there is a refusal to deliver. The Trading with the Enemy Act (chapter 106, § 7[c], 40 Stat. 418 [Comp. St. § 3115½d]) granted power to the President, when, after investigation, he determined that property was owned or owing or belonged or was held by an alien enemy, to require its conveyance, transfer, assignment, or delivery over to the Alien Property Custodian. By executive order of October 12, 1917, he vested in the Alien Property Custodian the executive administration of this law, and this power vested under the provisions of section 7 (a, c, d) of the act, which authorized the latter to act and require that such property be conveyed, transferred, assigned, or delivered, or payment be made at such time and in such manner as he, the Custodian, shall prescribe. The Custodian was authorized to make investigation and determine what property is so owing, or so belongs, or is so held. By amendment to the act (chapter 201, 40 Stat. 1020), the Custodian was empowered to seize "any money or other property including * * * patents, copyrights, applications therefor, and rights to apply for the same, trade-marks, choses in action, and rights and claims of every character and description owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy or ally of enemy not holding a license granted by the President hereunder."

By this statute it is provided that, whenever any such property shall consist of shares of stock or other beneficial interest in any corporation, it shall be the duty of the corporation to cancel upon its books all such

shares of stock or other beneficial interest standing in its name, which after investigation shall be determined to be enemy-owned, and such corporation is required to convey and transfer and deliver to the Alien Property Custodian, in lieu thereof, certificates issued for such shares or other beneficial interest to the Alien Property Custodian or otherwise, as the Custodian shall require. Protection is accorded to persons or corporations complying with this or in meeting the demands of the Custodian by section 7 (c). Within 60 days after the effective date of the act, by virtue of section 7 (d), it became the duty of the corporation and its officers to report to the Custodian the facts, whenever it had reasonable cause to believe that an alien enemy had any amount of stock or shares of such corporation.

In compliance with this requirement, the appellant reported on December 4, 1917, the existence of this stock here considered. The Custodian made investigation, and thereupon, on April 1, 1918, made a demand for the transfer of these shares, as well as payment of dividends, subscription rights, and other distributions and payments, whether in capital or income. On February 8, 1921, the then Alien Property Custodian made another demand that such shares of stock be transferred, assigned, and delivered to him, and further to cancel forthwith upon the books and records of the appellant the then existing shares. It is not disputed that the Dresden Company was the registered owner of this stock at all times since its issuance.

The appellant's refusal is based upon the argument that the stock does not in fact exist, and this because it is claimed to have been issued for an illegal and unlawful consideration. The claim is that the contract referred to between the Dresden Company and the appellant was illegal and void, because in violation of the Sherman Anti-Trust Law. This contract is said to taint the stock certificates with its illegality, and has rendered them ineffective as evidence of the stock interest in the appellant's corporation. This defense was interposed in the answer filed in opposition to the present suit. A motion was made to strike out the answer, which was granted, and in default of an answer a decree was made below, granting the relief prayed.

[1] The determination of the Alien Property Custodian had sufficient finality to require the appellant to issue stock to the Custodian in lieu of the stock of the Dresden Company and to cancel it as to the latter. Whether the decision of the Custodian was right or wrong was immaterial to the requirement for such transfer. Great Northern Railway v. Sutherland, 273 U. S. 182, 47 S. Ct. 315, 71 L. Ed. 596; Commercial Trust Co. of New Jersey v. Miller, 262 U. S. 51, 43 S. Ct. 486, 67 L. Ed. 858; Simon v. American Exchange National Bank, 260 U. S. 706, 43 S. Ct. 165, 67 L. Ed. 474; Stoehr v. Wallace, 255 U. S. 239, 41 S. Ct. 293, 65 L. Ed. 604; Central Union Trust Co. v. Garvan, 254 U. S. 554, 41 S. Ct. 214, 65 L. Ed. 403. All the rights and equities which may have existed in favor of the appellant remained open for future proceedings, and adequate statutory provision has been made for the appellant to proceed. But the determination and the demand of the Custodian are conclusive, requiring delivery of the stock. After the Custodian has secured possession, section 9 of the Trading with the Enemy Act (chapter 285, 42 Stat. 1511 [Comp. St. § 3115½e]) provides for presentation of claims to any interest in the property delivered to the Custodian. If the claim is not allowed within 60 days after the filing thereof, the claimant may institute a suit in equity in the District Court where claimant resides, or in the Supreme Court of the District of Columbia, for the allowance of its claim.

[2] But the appellant, recognizing this provision of law, argues that there is no interest in the stock or property in the stock demanded. For this argument it admits the issuance of the stock and the declaration and payment of dividends, but says the stock was unlawfully issued. There has been no determination that the stock is worthless. The appellant reported the stock to the Alien Property Custodian, and accepted his demand, by paying the dividends to him for more than seven years. The demand is sufficient in terms, and is clear and unequivocal as to the seizure of both stock and dividends and the requirement that the stock be transferred and the dividends paid. The stock is presumed to be owned by the registered owner, and, where the stock is stated to be held by the registered owner for another person, the latter is presumed to own the whole beneficial interest. Great Northern Railway v. Sutherland, 273 U. S. 182, 47 S. Ct. 315, 71 L. Ed. 596; B. & O. R. R. v. Sutherland (C. C. A.) 18 F. (2d) 560.

[3, 4] It is true, as argued, that the appellant is not estopped in testing the validity or lawful issue of the stock, if this proceeding were under section 9. Becker v. Miller (C. C. A.) 7 F.(2d) 293; Schall v. Miller (C. C. A.) 287 F. 502. But in a possessory action, to secure

delivery of the property demanded, the holder of the property making the report protects itself by compliance with the statute, but it may not retain the property after a determination by the Custodian and a demand for its delivery. This power to seize includes choses in action, rights, and claims of every character and description, owing or belonging to, or held for the benefit of, any enemy not holding a license granted by the President. In re Miller (C. C. A.) 281 F. 764; Kahn v. Garvan (D. C.) 263 F. 909. And the transfer of the property must take place immediately. Commercial Trust Co. of New Jersey v. Miller, 262 U. S. 51, 43 S. Ct. 486, 67 L. Ed. 858. This drastic power was conferred as a war power, and its purpose was to employ all legitimate means effectively to prosecute the war. United States v. Chemical Foundation, 272 U. S. 1, 47 S. Ct. 1, 71 L. Ed. 131. The decree below properly struck out this defense.

[5-7] Peace with Germany was declared by resolution of Congress effective July 2, 1921 (42 Stat. 105), which ended the state of war then existing between the United States and Germany. The Custodian's right thereafter to seize enemy-acquired property ceased. Sutherland v. Guaranty Trust Co. (C. C. A.) 11 F.(2d) 696; Miller v. Rouse (D. C.) 276 F. 715. The dividends here sought to be collected were declared after July 2, 1921. The Custodian insists upon the right to such dividends, because of the rule announced in the Application of Miller (C. C. A.) 288 F. 760. There the Custodian seized the vested estate of the beneficiary in the hands of a trustee. The interest of the beneficiary carried with it the interest earned thereon, and the Custodian was held to be entitled to have paid to him all interest on the principal of the estate belonging to the beneficiary coming into the hands of his trustee, even if that interest did not accrue until after the seizure, and this because he had seized the estate itself and all interest thereon. The dividends which the Custodian now claims were not due at the time of the demands. Dividends on the stock could not become due unless and until they were earned and declared by the directors of a corporation. If a corporation refused to pay dividends, the remedy of the holder of the stock is a right of action at law for their collection. In the Miller Case (C. C. A.) 288 F. 760, the title to the estate actually seized had become vested in the Custodian,

and interest accruing after the war was interest on the property which had been seized, and was certain in its character. There we said: "Although the time of payment was postponed, the legacies to be paid were definite and certain, and not dependent upon any contingency."

[8-10] A stockholder has a vested interest in the corporate profits by virtue of the stock ownership, and when a dividend is declared, and a segregation thereof is made to the amount of the dividend, the amount thereof is held by the corporation as trustee for the stockholder. Hopper v. Sage, 112 N. Y. 530, 20 N. E. 350, 8 Am. St. Rep. 771; Jermain v. Lake Shore & Michigan Southern Ry., 91 N. Y. 483. But there is no property to be seized, for which the Custodian may make a demand until there are dividends. The Custodian, after issuance of the certificate, has all the rights of a stockholder. This affords him the right to call for payment of the dividends, but, if suit is necessary, the provisions of section 17 of the act may not be invoked in requiring compliance. The question is one of remedy. No summary relief may be granted to the Custodian, where there were no dividends at the time the demand was made. When in possession, the Custodian is in place of the alien stockholder. After the seizure, the corporation would pay future dividends to the alien at its peril. But there is no trust fund until the dividends have been segregated and set apart as such. The stockholder's remedy, in the absence of such segregation, is solely one at law. All that the Custodian may seize is what the President was authorized after investigation to seize, namely, that which was owing or belonging to the alien. The President was not given the power to require the delivery to him of money or property not then owing, but which might become owing in the future. In the absence of the Custodian establishing that dividends were owing at the time of his determination and demand, he may not have the relief he has obtained under section 17 of the Trading with the Enemy Act.

The decree will be modified, by striking out the direction that the Custodian recover from the appellant all dividends declared on the stock since October 1, 1925; otherwise, the decree will be affirmed.

Decree modified in accordance with this opinion.