GARVAN, Alien Property Custodian, v. CERTAIN SHARES OF INTERNA-
TIONAL AGRICULTURAL CORPORATION IN THE NAME OF
WINTER AND VON METZSCH and three other similar cases.

(District Court, S. D. New York. January 31, 1921.)

War ⊝⎯12—Court has jurisdiction to compel transfer of corporate stock
issued to alien enemy to Alien Property Custodian.

The fact that outstanding negotiable certificates of stock issued by a
corporation, or by voting trustees representing the beneficial interest in
such stock, to an alien enemy, may have been transferred to a bona fide
holder not an alien enemy, *held* not to deprive a District Court of jur-
isdiction, under Trading with the Enemy Act, § 17 (Comp. St. 1918,
Comp. St. Ann. Supp. 1919, § 3115½i), to require the cancellation of such
certificates and the issuance of new ones to the Alien Property Custodian,
leaving any bona fide transferee of the original certificates to enforce his
rights under section 9 of the act; and it is immaterial that the original
certificates may not be within the jurisdiction of the court or the govern-
ment.

Seizure Proceedings under Trading with the Enemy Act. Libel by
Francis P. Garvin, Alien Property Custodian, against certain shares of
International Agricultural Corporation, registered in the name of Max
Winter and Gertrude von Metzsch, with three other similar cases.
Decrees for libelant.

Libels under section 17 of the Trading with the Enemy Act (Comp. St. 1918,
Comp. St. Ann. Supp. 1919, § 3115½i), in some instances for certain shares
of the International Agricultural Corporation, a New York corporation, and
in others for interest under a voting trust agreement in respect to the shares
of said company, standing respectively in the names of certain individuals or
corporations, determined in accordance with the provisions of the act to be
alien enemies.

The British Public Trustee claims by virtue of the alleged seizure in Great
Britain of the original trust certificates under the British Trading with the
Enemy Acts. Both prior to and subsequent to the bringing of the libel, the
voting trustees and the corporation offered to issue duplicate certificates of
the beneficial interest and shares respectively standing in the names of the
alleged alien enemies, but subject to the right, title, and interest of any person
or persons other than the alien enemies which might have been acquired by a
valid transfer of the outstanding certificates. They further offered to in-
stitute or appear in proper judicial proceedings to have the title to the out-
standing certificates and the claims of the Alien Property Custodian judi-
cially determined. The original certificates are not alleged to be within the
United States, and no judicial proceedings have heretofore been instituted to
determine by whom they are held.

Francis G. Caffey, Dist. Atty., and Earl B. Barnes, Asst. Dist. Atty.,
both of New York City, for libelant.

Hawkins, Delafield & Longfellow, of New York City, for one of the
voting trustees.

Hughes, Rounds, Schurman & Dwight, of New York City, for claim-
ant International Agricultural Corporation and for some of the voting
trustees.

Coudert Bros., of New York City, for O. R. A. Simkin, Public
Trustee under British Trading with the Enemy Acts.

⊝⎯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MACK, Circuit Judge (after stating the facts as above). In accordance with the views expressed in Bank v. Palmer (D. C.) 256 Fed. 680, I held originally, in some of the cases of this group, that if the Alien Property Custodian required the aid of this court for the seizure of property under section 17 of the Trading with the Enemy Act, the court had power to determine the adverse claims to the possession of the property.

The decision of the Supreme Court in Trust Co. v. Garvan, and other cases, 254 U. S. 554, 41 Sup. Ct. 214, 65 L. Ed. ——, rendered January 24, 1921, affirming (C. C. A.) 265 Fed. 477, 481 (see Garvan v. $25,-000 Canadian Southern Bonds, 270 Fed. 217, 2d C. C. A. November 10, 1920), settles this question adversely to the views then expressed by me.

These opinions and Judge Learned Hand's very full and excellent consideration of the scope and purposes of the act in Kahn v. Garvan (D. C.) 263 Fed. 909, with which I fully concur, render further discussion of these matters unnecessary.

The question before me is one of jurisdiction of the res. If this court has jurisdiction over the res, petitioner is entitled to the decree as prayed for.

Section 7–C of the Trading with the Enemy Act as amended November 4, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d), clearly contemplates the transfer for custodial purposes of stock shares, that is, of the obligation owing from a corporation to the shareholders. irrespective of the existence or location of any stock certificate. Does the fact that this obligation or the correlative right is to a great extent incorporated in a negotiable certificate which, not being within the jurisdiction of the court, or, so far as shown, within the jurisdiction of the government, is itself incapable of seizure, prevent the government from requiring and asking the aid of the court in compelling the cancellation of the original registration, the substituted registration of the Alien Property Custodian, and the issuance to him of a certificate in recognition of that registration for the purpose of effectuating, as to an incorporeal right, the equivalent of the seizure of chattels?

The respondents by their own offer in effect concede both the right of the government and the jurisdiction of the court to compel such a registration as will enable the Alien Property Custodian to exercise such rights in respect to the corporation as the registered alien enemy shareholder, without possession of the certificate, could have exercised, that is, the right to vote and to receive dividends. They contend, however, that in view of the lack of jurisdiction over the certificate itself, its negotiability, the possibility that it may be outstanding in the hands of some individual or government other than an alien enemy, and the liability of the corporation thereunder, there is neither jurisdiction over the stock, nor, even if there be jurisdiction, can the corporation constitutionally be compelled to issue any unconditional new certificate capable of transfer to a bona fide purchaser, and thereby subject itself to a double liability—the recognition of such a purchaser as its stockholder and an action for damages by the holder of the old certificate.

It is unnecessary to consider whether there would be jurisdiction in

this court to determine adverse claims to the stock or otherwise, either under section 9 (section 3115½e) or otherwise. For in the case of shares, as in the case of chattels, the object of such a proceeding as this is merely to vest the custody and the rights incident thereto in the Alien Property Custodian, not to determine the ultimate property rights either to the shares or to the certificate.

Furthermore, what the rightful owner of the shares is concerned with is not primarily the certificate, but the shares themselves. As to these, he has exactly the same rights under section 9 of the act that the claimant to chattels has. By proper and prompt proceedings thereunder, the holder of the original certificate, not an alien enemy, may recover from the Alien Property Custodian the new certificate on surrender and cancellation of the old one, and thereby obtain the full status of a shareholder with the only outstanding certificate. If through lack of knowledge of the seizure or for any other cause he fail to act promptly and thereby lose this right, nevertheless, in lieu thereof, he may enforce a claim to the proceeds of any disposition by the Alien Property Custodian of the shares as represented by the new certificates. These actions are the statutory substitutes for his claim for damages against the corporation. And in this respect there is, in my judgment, no substantial difference between chattels and shares of stock. The obligation of the corporation or of the voting trustees, whether based upon contract or estoppel, to recognize the bona fide holder of a certificate as its shareholder and on demand to register him as such, is no more absolute than the contractual obligation of an agent to hold chattels subject only to the specific orders of his principal. In each case the obligation is subject to the superior right of the government to actual seizure or its equivalent, under the war powers. While the exercise of this right may result eventually in loss of ownership of the chattel or shares, the statute provides what in law must be deemed an adequate compensation or substituted right and remedy, in the claim to the proceeds of any sale thereof.

The certificates of voting trustees of corporate shares, representing the beneficial interest in these shares, are for practical purposes similar to certificates of the shares of stock. The obligations of the voting trustees in respect to the recognition of transferees is no different from the obligation of the corporation itself in respect to transferees of stock certificates. Union Trust Co. v. Oliver, 214 N. Y. 517, 108 N. E. 809. They are not to be differentiated in proceedings under section 7–C.

I hold, therefore, that the shares of the corporation and the equivalent obligation of the voting trustees are the res in question; that the government may demand the transfer thereof to the Alien Property Custodian in the manner specified in the statute as it may demand the custody of a chattel; and that, on refusal, the court that has jurisdiction over the corporation or the trustees may by its decree compel such transfer.

Decree for libelant.