## GARVAN v. MARCONI WIRELESS TELEGRAPH CO. OF AMERICA.

(District Court, D. New Jersey. September 20, 1921.)

1. **War ⊗━12—Alien Property Custodian had power to determine alien enemies.**

In view of Executive Orders of October 12, 1917, and December 3, 1918, promulgated pursuant to sections 5 (a) and 6 of such act, the Alien Property Custodian had authority under the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½a–3115½j) to determine who were alien enemies whose property should be turned over to him.

2. **War ⊗━12—Demand by Alien Property Custodian of transfer of stock vested title.**

A demand by the Alien Property Custodian upon a domestic corporation to transfer stock held by an alien enemy immediately vested in such officer title to the stock, outstanding certificates being merely evidence of the ownership of the stock, which had its situs in the United States where it was deemed to be held by the corporation for the benefit of the owner, in view of Rules 2 (a) and 2 (c), promulgated by the President on February 26, 1918, under the authority of Trading with the Enemy Act, § 5 (a), being Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½c.

3. **War ⊗━12—Property, tangible or intangible, could be seized under Trading with the Enemy Act.**

Congress intended, when enacting the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½a–3115½j), that the President should cause property of every kind belonging to an alien enemy, tangible or intangible, to be seized.

4. **War ⊗━12—Vesting of title in corporate stock of alien enemy by demand held reasonable.**

Rules 2 (a) and 2 (c), promulgated by the President on February 26, 1918, under the authority of Trading with the Enemy Act, § 5 (a), being Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½c, providing that a demand by the Alien Property Custodian would effect a transfer of corporate stock owned by an alien enemy and that such a demand would forthwith vest in such officer title to such stock, were both reasonable and effective.

5. **War ⊗━12—Claims of third persons no excuse for not transferring stock on demand of Alien Property Custodian.**

That third persons might have claims upon or an interest in corporate stock, ownership of which was determined to be in an alien enemy by the Alien Property Custodian, was no reason why the corporation should not transfer the stock to such officer upon his demand under the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½–3115½j), since section 9 provides an adequate remedy for the true owner, and the corporation is completely protected by section 7 (e).

6. **War ⊗━12—Corporation could be required to issue new certificates without cancellation of old on demand by Alien Property Custodian.**

After the amendment of Trading with the Enemy Act, § 7 (c), being Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d, a corporation could be required on demand of the Alien Property Custodian to issue new certificates of stock held by alien enemies without presentation of the outstanding certificates for cancellation; such act being a war measure, and Congress not intending that old certificates be presented for cancellation.

7. **Statutes ⊗━174, 175—Cover only matters included expressly or by necessary implication.**

Statutory law covers only such matters as are expressly or by necessary implication included within its terms.

⊗━For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. War ⊝—33—Armistice held not to affect court's construction of Trading with the Enemy Act.**

In a proceeding by Alien Property Custodian to compel transfer of corporate stock owned by alien enemy on books of a domestic corporation, the decision of the court should not be affected by the armistice between the United States and Germany, on suggestion that, whether or not, in view of the armistice, the action in question should be prosecuted, was a matter for the determination of those charged with the administration of the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½a–3115½j).

Proceeding by Francis P. Garvan, as Alien Property Custodian, against the Marconi Wireless Telegraph Company of America. On rule to show cause why shares of stock of the company standing in the name of the Dresdner Bank should not be transferred to the Alien Property Custodian. Rule made absolute.

Elmer H. Geran, U. S. Atty., of Asbury Park, N. J., and Lucien H. Boggs and Dean Hill Stanley, Sp. Asst. Attys. Gen., both of Washington, D. C., for petitioner.

Griggs and Harding, of Paterson, N. J. (John W. Griggs, of Paterson, N. J., of counsel), for respondent.

RELLSTAB, District Judge. Under section 7(a) of the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d), the Marconi Wireless Telegraph Company reported that 2,945 shares of its common capital stock stood on its books in the name of the Dresdner Bank of Bremen, Germany. Upon investigation the Alien Property Custodian concluded that the bank was an alien enemy within the purview and meaning of the act, and accordingly demanded the Marconi Company to transfer the stock to him as Alien Property Custodian, cancel the old certificates of stock, issue new ones, and account to him for the dividends on the stock. The company refused to do so, and the Alien Property Custodian filed a petition to compel compliance with his demand on which rule to show cause was issued. The company made a return to that rule in the form of an answer setting out reasons for its refusal. These reasons constitute the issues before me.

The company gave six reasons for not complying with the demand, which will be taken up in order.

[1] 1. The determination that the Dresdner Bank was an alien enemy should have been made by the President and not by the Alien Property Custodian.

Section 5(a) of the act (section 3115½c) provides that the President may exercise any power or authority conferred by the act through such officer as he shall direct. Section 6 (section 3115½cc) gives him the authority to appoint an Alien Property Custodian. By Executive Orders of October 12, 1917, and December 3, 1918, the President delegated to the Alien Property Custodian certain powers, among which is included the power and authority to make the determination in question. Under these the determination of the status of the Dresdner Bank as an alien enemy was properly made. Kahn v. Garvan (D.

C.) 263 Fed. 909; Stoehr· v. Wallace et al., 255 U. S. 239, 41 Sup. Ct. 293, 65 L. Ed. —— (decided February 28, 1921).

[2-4] 2. The seizure of the stock by the Alien Property Custodian was ·not complete without the seizure of the outstanding certificates.

The Alien Property Custodian served written demand on the Marconi Company to transfer, etc., the stock on its books to him. The certificates are merely evidence of the ownership of the stock, which has its situs here in New Jersey, and is deemed to be held by the company in this state for the benefit of the owner. Jellenik v. Huron Copper Min. Co., 177 U. S. 1, 20 Sup. Ct. 559, 44 L. Ed. 647. On February 26, 1918, the President, under the authority of section 5(a) of the act, promulgated certain rules. Rule 2(a) prescribes a "demand" by the Alien Property Custodian as the proper method to effect a transfer of stock, and rule 2(c) provides that such a demand "shall forthwith vest in ·the Alien. Property Custodian such right, title, etc., in the money or other property demanded * * * as may be included in the demand." Congress intended that the President should cause property of every kind, tangible and intangible, to be seized. The act does not prescribe the mode of seizure, but a mode must have been intended which is both reasonable and effective. The mode used in this case and prescribed by the rules is reasonable, and when the demand was made the seizure was complete and effective. Kohn v. Jacob & Josef Kohn, Inc., et al. (D. C.) 264 Fed. 253; Miller v. United States, 78 U. S. (11 Wall.) 268, 20 L. Ed. 135.

[5] 3 and 4. Third persons might have claims upon or an interest in the stock, and the company would incur risk of liability in transferring it to the Alien Property Custodian.

Before the transfer is made in accordance with the demand, the Alien Property Custodian must determine whether or not the property belongs to an alien enemy. Of course, he may possibly make a mistake. If he does, section 9 (section 3115½e) provides an adequate remedy for the true owner, and the corporation is completely protected by section 7(e) of the act, which provides that—

"No person shall be held liable in any court for or in respect to anything done or omitted in pursuance of any order, rule or regulation made by the President under the authority of this act."

See Biesantz v. Alien Property Custodian, 106 Misc. Rep. 545, 175 N. Y. Supp. 46; Garvan v. Certain Shares of International Agricultural Corporation, 276 Fed. 206 (decided January 31, 1921).

[6, 7] 5. The company should not be required to issue new certificates of stock until the outstanding ones are presented for cancellation.

Before outstanding certificates of stock may be cancelled and new ones issued in lieu thereof, in time of peace, a corporation is justified, both by reason and legislative enactment, to require the production of the old certificates. But the act under which the Alien Property Custodian is proceeding is a war measure. Under section 12, paragraph 4 (section 3115½ff), it was the duty of every corporation issuing shares to transfer them upon its books to the name of the Alien Property Custodian "upon demand accompanied by the presentation of the certifi-

cates which represent such shares of beneficial interest." The Executive Order of February 26, 1918 (3d), authorized the Alien Property Custodian to demand the transfer of corporate stock on the books of the company to his name, and provided that—

"It shall be the duty of any corporation * * * to comply with such demand when accompanied by the presentation of the certificates which represent such corporate stock."

The Executive Order of July 16, 1918 (6a), provided that—

"Shares of stock * * * in a corporation * * * may be advertised and sold wherever the Alien Property Custodian shall determine; and it shall be immaterial whether such shares of stock * * * be represented or evidenced by certificates or instruments or writings of any kind and whether the Alien Property Custodian shall or shall not have the possession or control thereof in the event that the same shall be thus represented or evidenced."

In selling such shares of stock, however, considerable difficulty was experienced in securing purchasers because the Alien Property Custodian did not have the certificates representing the stock to present to the purchaser as evidence of his ownership. This difficulty was set forth in the remarks of Lee C. Bradley, Esq., at that time General Counsel for the Alien Property Custodian, before the Committee on the "First Deficiency Appropriation Bill, 1919."

On November 4, 1918, and doubtless in consequence of the difficulty thus experienced, section 7(c) of the act was amended. As amended it provides that it shall be the duty of any corporation issuing shares of stock belonging to or held for or by an alien enemy, to cancel the same on its books, and in lieu thereof to issue certificates for such shares to the Alien Property Custodian when required by him to do so. In this amendment the requirement that the outstanding certificates be presented to the corporation before being cancelled, and new ones issued in lieu thereof, was omitted. No reason, other than the difficulties encountered, sufficiently accounts for the omission. The requirement as it stood in section 12 practically placed the enforcement of the act in many cases into the hands of alien enemies. Some refused to surrender their certificates of stock. Others were in Germany and could not present them even if they desired to do so. The respondent, however, says that while "the amendment of November 4, 1918, did not specifically state that in cases of the demand for transfer of corporate certificates, the certificates should be produced, * * * such condition is implied." Statutory law covers only such matters as are expressly or by necessary implication included within its terms. "Such condition" is not expressly included in the amendment itself, and there is nothing in its language showing necessary implication. The history of the act indicates that the omission was not accidental, but intentional. The law prior to November 4, 1918, and Executive Orders based thereon, expressly contained the provision requiring the presentation of the outstanding certificates before the stock could be transferred on the books of the company. The difficulties thus caused were brought to the attention of certain members of Congress, and the amendment referred to followed and the requirement was left out. The only conclusion tenable is that it was inten-

tionally omitted. This conclusion seems sound in reason, and is supported by the only two courts, so far as I am informed, in which the question has been raised. Garvan v. Certain Shares of International Agricultural Corporation, supra; Garvan v. Continental Oil Company (United States District Court for the District of Colorado, no opinion filed).

[8] 6. Whether or not, in view of the armistice, this action should be prosecuted, is a matter for the determination of those charged with the administration of the statute.

It is the duty of the court to declare the law when a case is properly before it as in this case. Consequently, contrary to the suggestion of the respondent, the decision should not abide, or be affected by, the diplomatic relations between the United States and Germany.

The rule to show cause therefore will be made absolute, and the transfer of the stock ordered in accordance with the prayer of the petition.