## GREAT NORTHERN RAILWAY COMPANY et al. *v.* SUTHERLAND, ALIEN PROPERTY CUS-TODIAN.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 53. Argued December 3, 6, 1926.—Decided January 17, 1927.

1. Stock is presumed to be owned by the person registered as owner on the company's books; and when stated to be held by the registered owner for another named person, the latter is presumed to own the whole beneficial interest. P. 188.

2. A demand of the Alien Property Custodian upon a corporation for transfer to himself of every right, title and interest of an alien enemy in shares of stock, *construed* as a demand for, and as a symbolic seizure of, the shares. P. 188.

3. By the Act of November 4, 1918, it was made the duty of a corporation to cancel old certificates and issue new ones for shares seized by the Custodian before or after the date of the Act.   P. 192.
4. Under that Act the right of the Custodian to new certificates did not depend upon surrender of the old ones.   P. 192.
5. To require a corporation so to transfer enemy-owned shares, without surrender of the old certificates, was within the war power of Congress, and did not deprive of due process the corporation issuing the shares or the company acting as its registrar, they being protected by § 7(e) of the Trading with the Enemy Act and non-enemy owners by § 9.   P. 193.

So *held,* where certificates and by-laws allowed transfer only by the holder or his attorney upon surrender and cancellation of the old certificates—conditions also imposed by the company's charter; and when the company had its transfer office, and its shares listed on an exchange, in New York by the laws of which it need not issue certificates without surrender of old, unless the old were lost or destroyed; and where the company's registrar, a New York Trust Company, as a condition to being accepted by the exchange, was obliged not to register transfers without surrender of outstanding certificates.

Affirmed.

APPEAL from a decree of the District Court, in a suit by the Alien Property Custodian under the Trading with the Enemy Act, requiring the Great Northern Railway Company and the Central Union Trust Company, registrar of its stock, to transfer shares of stock held by aliens, and to issue and countersign new certificates therefor, in the name of certain trust companies as depositaries for the Custodian.

*Mr. Walker D. Hines,* with whom *Mr. M. L. Countryman* was on the brief, for the appellants.

*Assistant Attorney General Letts,* with whom *Mr. Dean Hill Stanley,* Special Assistant to the Attorney General, was on the brief, for the appellee.

*Mr. Harold W. Bissell.*filed a brief as *amicus curiae,* by special leave of Court, on behalf of the Deutsche Bank.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This is a suit under § 17 of Trading with the Enemy Act, October 6, 1917, c. 106, 40 Stat. 411, 425, which confers upon the district courts jurisdiction to enter " such orders and decrees, and to issue such process as may be necessary and proper in the premises to enforce the provisions of this Act." It was brought on February 7, 1925, in the federal court for southern New York. The Alien Property Custodian was the plaintiff; the Great Northern Railway Company and the Central Union Trust Company the defendants. The relief sought is that the Great Northern be ordered to cancel upon its books and records designated certificates for shares of its stock standing in names of or held for enemies; that it issue new certificates therefor in the names of certain trust companies as depositaries for the Custodian; that the Central Union be ordered to countersign the new certificates as Registrar of Transfers; and that the new certificates so countersigned be delivered to the Custodian without his presenting and surrendering the old ones. The defendants entered a general appearance. On the pleadings and facts stipulated, the court entered a final decree, which required the issue, countersigning and delivery of the new certificates without presentation or surrender of those outstanding. Rights arising under the Constitution and treaties are alleged to have been violated. On this ground, a direct appeal was taken to this Court under § 238 of the Judicial Code, as it stood prior to the effective date of the Act of February 13, 1925.

During the war the Great Northern filed with the Custodian, from time to time, the reports required by § 7(a) of the Act. All of these reports except one contained lists of persons who were registered owners of specified numbers of shares and were believed to be ene-

mies.  One report stated that Lieber, & Co., believed to
be an enemy, was believed to be the beneficial owner of
shares standing in the name of A. Biederman & Co.    All
these reports stated that the actual location of the certifi-
cates representing said, shares was unknown to the com-
pany.    In consequence of these reports, the Custodian
made upon the Great Northern demands in writing in
respect to the shares therein referred to.    All these de-
mands were made during the war; and all were in sub-
stantially the same form.    The construction and effect of
that document are the principal matters in controversy.
The part of it requiring special consideration is this:

" To Great Northern Railway Company, Address 32 Nas-
     sau St., New York, N. Y.:

" I, A. Mitchell Palmer, Alien Property Custodian, duly
appointed, qualified, and acting .under the provisions of
the Act of Congress known as the ' Trading with the
enemy Act,' approved October 6, 1917, and the executive
orders issued in pursuance thereof, by virtue of the au-
thority vested in me by said act, and by said executive
orders, after investigation do determine that Albertine,
Baroness Schauenburg (name of enemy or ally of enemy),
whose address is Friedburg, Baden, Germany (last known
address), is an enemy (not holding a license granted by
the President), and has a certain right, title, and interest
in and to 12 shares of preferred (common, preferred)
stock standing on your books in the name of Albertine,
Baroness Schauenburg.                            .

" I, as Alien Property Custodian, do hereby require
that you shall convey, transfer, assign, and deliver to me
as Alien Property Custodian, to be by me held, adminis-
tered, and accounted for as provided by law, every right,
title, and interest of the said enemy in said stock, includ-
ing in respect to the said stock the right which the said
enemy may have, (a) to receive all notices issued by you

to the holders or owners of similar stock, shares, or certificates; (b) to exercise all voting power appertaining to such stock, shares, or certificates; (c) to receive all subscription rights, dividends, and other distributions and payments, whether of capital or of income, declared or made on account of such stock, shares, or certificates.

"I, as Alien Property Custodian, do hereby further require that you note the substance of this demand upon your stock books and/or stock ledger, and that you furnish a copy of this demand to the registrar and/or transfer agent, if any, of the stock in respect to which this demand is made.

"I, as Alien Property Custodian, do hereby further require that within ten days from the service of this demand upon you, you report to me any and all acts which you have done, or omitted to do, pursuant to the requirements of this demand.

"Until otherwise directed, you will remit to the Alien Property Custodian at Washington, by check payable to his order, all payments, whether of capital or income, now or hereafter declared or due on account of such stock, shares, or certificates, and you will direct such notices in respect to the said stock, shares, or certificates to the Alien Property Custodian.

"This demand is supplementary to any demand which may hitherto have been made upon you, accompanied by the presentation of certificates which represent shares or beneficial interests, for the transfer into my name as Alien Property Custodian, of such certificates, or for the transfer thereof into the name of any nominee of me as Alien Property Custodian, and this demand shall not prejudice or affect any demand accompanied by such certificates which has been, or which may hereafter be, made."

The Custodian admitted that, during the war, there was no request specifically for the cancellation of the old

certificates and the issue of new ones.   He contended that the President determined, as set forth in the original demand, that the persons in whose names the shares were registered, or those for whom the shares were held, were enemies not licensed, each having a certain right, title and interest in and to the specific shares; that, by the demand, he duly seized these shares and the alien's interest therein; that thereby the Custodian secured legally a control over the shares as complete and effective as the control given the Custodian over chattels physically seized; that this is true although prior to the Act of November 4, 1918, c. 201, § 1, Congress had not provided any method for enforcing the issue of new certificates without surrender of the old; that when the Trading with the Enemy Act was so amended, he became entitled to have new certificates for the shares delivered to him without the presentation or surrender of the old ones; that having thereafter duly requested their issue and delivery to him he was entitled to the relief prayed for.

The companies admitted that, after the war and before institution of the suit, there was a request, appropriate in form.   They denied that the determinations and the demands made during the war were duly made.   But their defense was rested mainly on the claim that the *corpus* of the shares, as distinguished from an undefined interest therein, was not seized or demanded during the war.   They contend that by the original demand the President determined only that the enemy had some interest; that the instrument did not constitute a symbolic seizure of the shares; and, hence, that it did not create such a right as could serve as a basis for compelling their transfer to the Custodian, or the cancellation of the old certificates and the issue of the new ones.   They insist that the determination of some interest is not equivalent to determining that the shares belong to or are held for the enemy; that any interest held by the enemy, however

remote or contingent, might satisfy such a determination and yet the shares in fact belong to and be held for another, not an enemy; that a demand upon the corporation to assign such an undefined interest is not a demand that the shares themselves be transferred; and that this interpretation of the document is supported by the fact that the Custodian made, at the time, no effort to obtain a new certificate and in fact expressly indicated that he was not making any such effort. The companies' further contention is that, as applied to the facts stipulated, the Act as amended did not purport to require cancellation of the old and delivery of new certificates; and that, if it did, it denied due process and hence was void under the Fifth Amendment.

It may be assumed that under § 7 recovery by the Custodian of property demanded by him, is limited by the scope of the demand. Compare *Sutherland* v. *Guaranty Trust Co.*, 11 F. (2d) 696; and that the demand made after the war, if it stood alone, would not avail the Custodian. Compare *Miller* v. *Rouse*, 276 Fed. 715, 717.

*First.* The main question is whether the Custodian had, by the demand above set forth, taken action which could legally serve as a basis for the specific request for the certificates made after the war. The demand must be read in the light of the then existing legislation, of its formal title or designation, of the extracts of the Executive Order embodied in it, and of the reports of the Great Northern out of which it originated. And these reports must be read in the light of the fact that stock is presumed to be owned by the registered owner and that, where stock is stated to be held by the registered owner for another named person, the latter is presumed to own the whole beneficial interest. Compare *Turnbull* v. *Payson*, 95 U. S. 418, 421; *Keyser* v. *Hitz*, 133 U. S. 138, 149; *Finn* v. *Brown*, 142 U. S. 56, 67.

The omission from the demand of the request for a new certificate is susceptible of a simple explanation. At the times of the earlier demands, § 12 of the Act, as amended by Act of March 28, 1918, c. 28, § 1, 40 Stat. 423, 460, made it the duty of corporations to transfer seized shares upon its " books into the name of the alien property custodian " only if his demand was " accompanied by the presentation of the certificates which represent such shares." The Custodian was unable to present the old certificates. Consequently, a request for the new certificates would not have been inserted in the demand, even if the instrument had contained an express recital of the determination that the enemy owned the whole interest in the shares and that the whole interest had been seized. It was not until the amendment of November 4, 1918, that the corporation was required to cancel the old certificates and issue the new ones, whenever enemy property consisted of " shares of stock or other beneficial interest standing upon its . . . books in the name of any person . . . or held . . . for the benefit of any person . . . who shall have been determined by the President, after investigation, to be an enemy . . . and which shall have been required to be conveyed, transferred, assigned or delivered to the Alien Property Custodian or seized by him . . ." It is true that the demands for some of the shares were not made until after November 4, 1918; and that in them the request for the new certificates might have been made. But, in view of war conditions, it is not surprising that the modification of the form in use was not promptly made and that the old form continued in use.

The form used indicated clearly, in parts other than that quoted above, the intention to seize the whole property. It was entitled: " Demand on corporation for stockholders' interest without presentation of certificates. Demand by Alien Property Custodian for property."

Preceding that part of the document addressed specifically to the Great Northern quoted above, were printed the following " Extracts from Executive Order of February 26, 1918."

Sec. 1 (c). "The words ' right,' ' title,' ' interest,' ' estate,' ' power,'. and ' authority ' of the enemy, as used herein, shall be deemed to mean respectively such right, title, interest, estate, power, and authority of the enemy as may actually exist and also such as might or would exist if the existing state of war had not occurred, and shall be deemed to include respectively the right, title, interest, estate, power, and authority in law or equity or otherwise of any representative of or trustee for the enemy or other person claiming under or in the right, of, or for the benefit of, the enemy."

Sec. 2 (a). "A demand for the conveyance, transfer, assignment, delivery, and payment of money or other property, unless expressly qualified or limited, shall be deemed to include every right, title, interest, and estate of the enemy in and to the money or other property demanded as well as every power and authority of the enemy thereover."

Sec. 2 (c). " When demand shall be made and notice thereof given, as hereinbefore provided, such demand and notice shall forthwith vest in the Alien Property Custodian such right, title, interest, and estate in and to and possession of the money or other property demanded and such power or authority thereover as may be included within the demand, and the Alien Property Custodian may thereupon proceed to administer such money and other property in accordance with the provisions of the ' Trading with the enemy Act ' and with any order, rules, or regulations heretofore, hereby, or hereafter made by me or heretofore or hereafter made by the Alien Property Custodian."

Sec. 3 (d). " The Alien Poperty Custodian may exercise any right, power, or authority of the enemy in, to,

and over corporate stock, shares, or certificates representing beneficial interests owing or belonging to or held for, by, on account of, or on behalf of or for the benefit of an enemy, including (1) the right to receive all notices issued by the corporation, unincorporated association, company, or trustee which issued such stock, shares, or certificates, to the holders or owners of similar stock, shares, or certificates, (2) the right to exercise all voting power appertaining to such stock, shares, or certificates, and (3) the right to receive all subscription rights, dividends, and other distributions and payments, whether of capital or income, declared or made on account of such stock, shares, or certificates, regardless of whether or not such stock, shares, or certificates be in the possession of the Alien Property Custodian and regardless of whether or not such stock, shares, or certificates have been transferred to the Alien Property Custodian upon the books of the corporation, association, company, or trustee issuing the same."

Following the provisions of § 3(d) of the Executive Order, the Custodian enumerated in his demand upon the Great Northern substantially every right which the sole owner of shares could exercise, except the right to receive a certificate representing the stock and the right to dispose of the same. His request should be construed as a demand for delivery of the shares, because it extended to everything which the legislation permitted prior to the amendment of November 4, 1918. The Custodian sought possession, not title, *Central Trust Co.* v. *Garvan,* 254 U. S. 554, 566, 569. The term seizure as used in this connection connotes merely the taking of possession. Hence there was no occasion to define the extent of the enemy's ownership. The demand operated as a symbolic seizure.

The claim of the Custodian to have the new certificates does not rest, as has been argued, upon post-war action

taken by him; or upon a construction of the Joint Resolution of July 2, 1921, officially declaring the war at an end; or upon any provision of the Treaties of Peace, August 24, 1921, 42 Stat. 1946; August 25, 1921, 42 Stat. 1939. The Custodian's claim and the decree rest wholly upon the demands made during the war. Since the Custodian's possession of the shares was completed before the end of the war, it is immaterial that the demand for new certificates was not made until after the war. The Act of November 4, 1918, had made it the duty of the corporation to cancel the old certificates and to issue new ones, whenever the Custodian had seized shares. Section 5 of the Joint Resolution of July 2, 1921, reserved to the Custodian all property which before that date had come under his control.

The seizures made before November 4, 1918, were equally effective with those made after. It is urged that so to hold gives retroactive effect to the amendment of that date. But this is not true. The amendment does not enlarge the scope of the seizure. No substantive right is thereby affected. The amendment confers merely the adjective right to require of the corporation delivery of the usual evidence of effective possession of shares. The right conferred is comparable to providing a new judicial remedy for an existing substantive right. As was said in *Cox v. Hart,* 260 U. S. 427, 435: "A statute is not made retroactive merely because it draws upon antecedent facts for its operation."

*Second.* The companies contend that, even after the amendment of November 4, 1918, the Act did not purport to confer upon the Custodian the power to demand new certificates without surrender of the old. As seen above, § 12 of the original Act made it the duty of the corporation to transfer shares or certificates into the Custodian's name only if the old certificates were surrendered. It is

true that this condition was never in terms removed from that section.   But it was necessarily removed when the Act of November 4, 1918, amended § 7(c) by requiring the corporation to · issue new certificates whenever the Custodian had demanded the shares of alien enemies.   See *Garvan* v. *Marconi Co.*, 275 Fed. 486; *Garvan* v. *Certain Shares of International Agricultural Corp.*, 276 Fed. 206; *Columbia Brewing Co.* v. *Miller*, 281 Fed. 289; *Miller* v. *Kaliwerke Aschersleben Aktien-Gesellschaft*, 283 Fed. 746. ·

*Third.* The companies contend that the Act, so con- strued and applied, deprives them of due process, since it confers upon the Custodian rights not possessed even by the owner of the shares.   It is urged that the owners of. stock in the Great Northern, took it subject to the provision inserted in the certificate that it is " transferable only on the books of the company in person or by attorney upon surrender of this certificate "; that the Great North- ern's by-laws provide that its shares " shall be transferred only on the books of the company by the holder thereof in person or by his attorney upon surrender and cancella- tion of certificates for a like number of shares "; that these conditions were imposed by it under its charter, a special act of the legislature of Minnesota; and that they consti- tute property attributes inhering in the shares and in the stock certificates which are evidences thereof; that the Great Northern shares are listed upon the New York Stock Exchange and the company maintains in New York an office for transferring certificates of its stocks; that § 17 of the Personal Property Law of New York provides that, except where a certificate is lost or de- stroyed, the corporation shall not be compelled to issue a new certificate until the old certificate is surrendered to it; and that the Central Union, Registrar of Great Northern stock, is under agreement with the New York

Stock Exchange, whereunder such Registrar, as a condition of being accepted by the New York Stock Exchange, is obligated not to register the transfer of certificates of Great Northern without surrender of the certificates outstanding therefor.

The decisions of this Court and provisions made in the Act dispose of this contention. Protection to the rights of owners other than enemies was provided for by § 9. *Stoehr* v. *Wallace,* 255 U. S. 239, 243–246; *Central Trust Co.* v. *Garvan,* 254 U. S. 554, 567–569. Neither the Railway nor the Registrar has any interest in the shares. They are protected in making delivery of the new certificates by § 7(e) of the Act which provides:

." No person shall be held liable in any court for or in respect to anything done or omitted in pursuance of any order, rule, or regulation made by the President under the authority of this Act.

"Any payment, conveyance, transfer, assignment, or delivery of money or property made to the alien property custodian hereunder shall be a full acquittance and discharge for all purposes of the obligation of the person making the same to the extent of same."

The requirement that the Company make complete delivery to the Custodian of the possession of the shares including the usual indicia was well within the war powers of Congress. See also *Garvan* v. *Certain Shares of International Agricultural Corporation,* 276 Fed. 206; *Miller* v. *Kaliwerke Aschersleben Aktien-Gesellschaft,* 283 Fed. 746.

*Affirmed.*

Mr. Justice Sutherland, Mr. Justice Sanford and Mr. Justice Stone, dissent.