**ISENBERG et al. v. TRENT TRUST CO., Limited.**

Circuit Court of Appeals, Ninth Circuit. May 21, 1928.

No. 5193.

1. War ⊜⇒12—Alien Property Custodian's demand on trustee, after trustee had surrendered corpus of trust, held ineffective as seizure (Trading with the Enemy Act [50 USCA Appendix]).

Under Trading with the Enemy Act (50 USCA Appendix; Comp. St. § 3115½a et seq.) Alien Property Custodian's demand on testamentary trustee for surrender of trust property after trustee had surrendered it to depositary appointed by Custodian and had been divested of title thereto, held ineffective as seizure, in absence of demand on depositary.

2. War ⊜⇒12—Trustee's voluntary surrender of corpus of trust to Alien Property Custodian's depositary without authority from or demand by Custodian or determination that beneficiaries were enemies held unauthorized (Trading with the Enemy Act, § 7-d, 50 USCA Appendix § 7 (d).

Testamentary trustee's voluntary surrender of shares of stock, constituting corpus of trust

26 F.(2d)—39

estate standing in name of trustee to depositary designated by Alien Property Custodian, without authority from Custodian or determination that any of beneficiaries of trust estate were enemies, and without demand for surrender of property under Trading with the Enemy Act, § 7-d, 50 USCA Appendix § 7 (d), Comp. St. § 3115½d(d) was without authority of law.

3. War ⊜⇒12—Trust company assuming duties of trustee and at same time discharging duties as Alien Property Custodian's representative, held acting in inconsistent capacities (Trading with the Enemy Act [50 USCA Appendix]).

Where trust company designated as depositary by Alien Property Custodian, and, as such, having possession of shares of corporate stock constituting corpus of active testamentary trust, was appointed trustee of such trust, its duty was to resign as Custodian's depositary on account of conflicting interests.

4. War ⊜⇒12—Alien Property Custodian's demand for interest of decedent's estate in stock constituting corpus of trust charged testamentary trust and Custodian's depositary with notice of extent of seizure (Trading with the Enemy Act [50 USCA Appendix]).

Where Alien Property Custodian demanded "the right, title, and interest" of decedent's estate in certain shares of stock constituting corpus of testamentary trust, corporate trustee, which was also Custodian's depositary, held chargeable with notice of nature and extent of seizure, and, until respective rights of trustee and beneficiaries were determined, no rights in any particular portion of trust were confiscable by Custodian, since he was vested with only the right, title, and interest of beneficiaries, some of whom were alien enemies and others loyal American citizens.

5. War ⊜⇒12—Trustee held liable for failure to initiate proceeding to recover corpus which would have safeguarded interests of American citizen beneficiaries (Trading with the Enemy Act, § 9 [50 USCA Appendix § 9]).

Where corpus of testamentary trust was delivered to Alien Property Custodian's depositary on custodian's demand for "the right, title, and interest" of decedent's interest therein, and some of beneficiaries were loyal citizens and others were enemy aliens, held that it was trustee's duty to initiate proceeding under Trading with the Enemy Act, § 9 (50 USCA Appendix, § 9; Comp. St. § 3115½e), to recover corpus of estate which would have required Custodian to retain property until judicial determination of rights of beneficiaries thereto, with opportunity to protect and segregate interests of American citizens involved, and trustee was liable on its accounting for failure to do so.

6. War ⊜⇒12—Alien Property Custodian having no title to stock constituting corpus of trust, his sale thereof was void (Trading with the Enemy Act [50 USCA Appendix]).

Where Alien Property Custodian acquired no legal title to shares of stock constituting corpus of testamentary trust by his demand nor by trustee's voluntary surrender thereof to Custodian's depositary, Custodian's sale of shares in corpus was wholly void, and purchasers acquired no title.

Appeal from the Supreme Court for the Territory of Hawaii; E. C. Peters, Antonio Perry, and Alexander Perry, Jr., Judges.

Petition by the Trent Trust Company, Limited, as trustee of the estate of Otto Isenberg, deceased, to settle its account as such trustee, in which proceeding Carl H. W. Isenberg and others filed objections. Decree of the territorial circuit court of Hawaii adverse to trustee was reversed by the Territorial Supreme Court, and trustee appeals. Decree of Territorial Supreme Court reversed, and decree of circuit court affirmed.

Otto Isenberg, a German resident of Hawaii, died in 1902, leaving a widow and nine children. By will he created trusts vested in two designated trustees, by which two-thirds of his estate was to be delivered in equal shares to the children when they reached the age of 25 years, and one-third of his estate was to be held to pay the widow the income thereof for life, the remainder to go to the children in proportions as provided in the trust for them. On September. 18, 1905, the probate of the estate was closed, the executors were discharged, and the estate passed to the trustees, and they received the testator's shares of stock of the Kekaha Sugar Company. On September 20, 1905, on their petition for partial distribution of the trust estate, the court made an order directing that 236 shares of the Kekaha stock be apportioned to the widow, she to receive the income thereof, and 68 shares to Paul Otto Isenberg, to be delivered when he reached the age of 25 years. At the time of the World War, the 236 shares had been increased by stock dividends to 550 shares, and the 68 shares in the trust for Paul Otto, one of the sons, had been thus increased to 170 shares. In 1903 the widow and seven of the children removed to Germany and resided there until the time of the World War. Paul Otto served in the German Army and died in Germany. The six daughters married Germans, all of whom served in the German Army, except one, who was a court official. In 1920 the widow and one daughter returned to the United States. The widow and her children, excepting Hans and Carl, were enemies under the Trading with the Enemy Act (50 USCA Appendix; Comp. St. § 3115½a et seq.). In December, 1917, Schultze, a German citizen resident in Hawaii, as one of the trustees of the estate, made to the Alien Property Custodian an informal report of the property in his hands. Rodiek, the other trustee, was in San Francisco. On November 19, 1917, the Kekaha Sugar Company made an informal report of 140 shares of Kekaha stock standing on its books in the name of the estate of Otto Isenberg.

On January 21, 1918, the Alien Property Custodian appointed the appellee depositary in Honolulu and made its president his representative, with instructions to take possession as depositary of any alien enemy property reported to him, and, in case of large stockholdings, to have the stock put in the name of the Alien Property Custodian. The appellee published notice of its appointment as Custodian, and made demand for the surrender of enemy owned property to it as depositary for the Alien Property Custodian. On January 29 and February 2, 1918, Schultze delivered to the appellee as depositary the Kekaha shares in his hands as trustee. On March 11, 1918, stock certificates which had been delivered to the appellee were transferred into the latter's name on the books of the Kekaha Company in accordance with the instructions of the Alien Property Custodian. On March 9, 1918, the appellee rendered formal reports to the Custodian, including 840 shares of Kekaha Sugar Company as alien enemy owned. Schultze, as trustee, reported 500 shares held by him as trustee of one-third of the estate, the income of which was payable to the widow, seven-ninths of the remainder payable to the seven children. On the same date Schultze also reported 170 of Kekaha stock as being Paul Otto's share of the estate, and made a similar report as to Dorothea's 170 shares. All these reports were registered in the Custodian's office at Washington, and on April 3, 1918, were referred to the Bureau of Trusts. On May 17, 1918, the Custodian issued a demand to the Kekaha Sugar Company, declaring that the estate of Otto Isenberg was alien enemy property, and seizing all the right, title, and interest in the estate's 840 shares then on the company's books. He also issued eight demands, directed to Schultze as trustee, declaring that the widow and seven of the children therein named were enemies, and seizing all their right, title, and interest in and to the estate of Otto Isenberg, and also directed a demand to Schultze as guardian of Paul Otto Isenberg, declaring that the latter was an enemy, and seizing all his right, title, and interest in the estate, which included 170 shares of the Kekaha Sugar Company. A like demand was made as to Dorothea's property.

In May, 1918, the Custodian executed designations to the appellee as depositary of the estate of Paul Otto, the estate of Dorothea, and the estate of five remaining alien enemy

children. On July 19, 1918, Schultze filed in the territorial court his petitions for discharge as trustee and for discharge as guardian for Paul Otto and Dorothea. On August 23, 1918, his accounts were settled and approved, and he was discharged. On August 15, 1918, the Custodian issued to Schultze a receipt and acquittance for the delivery of shares of the Kekaha Sugar Company which had been reported by him as trustee and by him delivered to the appellee as depositary. On October 31, 1918, the appellee was appointed trustee of the estate as successor to Schultze and Rodiek. On December 19, 1918, the Custodian ordered the sale of shares of stocks which had been seized in a number of enemy trusts, including the Isenberg estate trust, and in January, 1919, 2,414 shares of Kekaha stock, including all the shares of the Isenberg estate, were sold at public auction at an average price of $158 a share.

On October 26, 1921, the appellee filed a petition in the circuit court to settle its account as trustee of the estate of Otto Isenberg, including the question of its liability to account for 670 shares of Kekaha Sugar Company stock which by the appellee had been reported to have been sold by the Alien Property Custodian as property of enemy beneficiaries of the estate. The appellants filed specifications of objection to the account, and upon the hearing had thereon the trial court disregarded the charges of fraud and conspiracy, but found that the stock was a part of the trust estate and that at the time of the accounting it should have been in the appellee's possession, and that it had been lost to the estate through its failure to reduce it to possession, and that the appellee was under obligation to restore said 670 shares to the estate, or in default, to pay the estate their value at the time of the trial, together with the dividends which had accrued thereon, with interest, and referred the case to a master. The master reported to the court the value of the shares and charged interest thereon. The court approved the master's report, and entered a decree removing the appellee as trustee, and appointing a successor as trustee, and adjudging that the appellee pay to said successor the sum of $287,-323.40, with interest from August 31, 1923, and pay the master $7,500 and costs. The appellee appealed to the Supreme Court of the territory. That court, one judge dissenting, reversed the decree of the circuit court, and found against all charges of fraud or willful malfeasance on the part of the appellee, and found that two-ninths of the stock

of the estate was not enemy owned and had never been seized, that the appellee was at fault in permitting the sale of those two-ninths, that the appellee should not have acted both as trustee of the estate and as representative of the Alien Property Custodian, and that it should be surcharged with $2,-455.90 on the sale of the two-ninths interest and interest thereon; that the appellee was properly removable as trustee because of its inconsistent capacities. From that decree appeal is taken to this court.

John Francis Neylan, of San Francisco, Cal., and Barry S. Ulrich, of Honolulu, Hawaii (Grove J. Fink, of San Francisco, Cal., of counsel), for appellants.

Oscar Sutro and Renato Capocelli, both of San Francisco, Cal. (Smith, Warren, Stanley & Vitousek, of Honolulu, Hawaii, and Pillsbury, Madison & Sutro, of San Francisco, Cal., of counsel), for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The controversy involves the liability of the appellee to account for 670 shares of the capital stock of the Kekaha Sugar Company, reported by the appellee to have been sold under the act known as the Trading with the Enemy Act, by the Alien Property Custodian, as property of beneficiaries of the estate of Otto Isenberg, deceased. The circuit court found that the stock was part of the trust estate, and that at the time of the accounting it should have been in the appellee's possession as trustee, and that it had been lost to the estate, through its negligence in failing to reduce it to possession. The Supreme Court of the territory held that the demand addressed by the Custodian in May, 1918, to the Kekaha Sugar Company, for 840 shares of common stock therein standing on its books in the name of the estate of Otto Isenberg, did not operate to transfer to the Custodian any title either of the trustee or of the beneficiaries under the will, because that company did not hold any property belonging either to the trustees or to the beneficiaries; there being no deposit of any of the certificates of stock with the Kekaha Sugar Company for safe-keeping or for any purpose, that the company was not the agent either of the trustees or of the beneficiaries, and that for those reasons the demand was not sufficient to accomplish the seizure of the property of others which the company did not hold or control in any way.

[1] While we are constrained to differ with the learned court in that view of the law, Stoehr v. Wallace, 255 U. S. 239, 41 S. Ct. 293, 65 L. Ed. 604; Great Northern R. Co. v. Sutherland, 273 U. S. 182, 47 S. Ct. 315, 71 L. Ed. 596, we think the court's conclusion is sustainable on other grounds. The demand made on the Kekaha Sugar Company gave notice that the Custodian had determined that "Estate of Otto Isenberg, whose address is Berlin, Germany, is an enemy and has a certain right, title, and interest in and to 840 shares of common stock standing on your books in the name of Estate Otto Isenberg." There was no estate of Otto Isenberg whose address was Berlin or elsewhere, and there were no shares standing on the books of the Kekaha Sugar Company in the name of the Estate Otto Isenberg. Otto Isenberg had died many years before. His estate had been administered and settled and closed, and his executors had been discharged in 1905, and in that year the property of the estate had been delivered to trustees, who held it for the benefit of Otto Isenberg's widow and children, and from and after that date the shares of the stock of the Kekaha Sugar Company stood in the names of the trustees. We are unable to see why the reasoning of the territorial Supreme Court and the conclusion which it reached as to the demand upon the Kekaha Company should not apply to the demands made upon the trustees Schultze and Rodiek. At the time when those demands were made, the trustees held no property belonging either to themselves or to the beneficiaries of the trusts. The demands were made in June, 1918. At that time the appellee held, and since January 31, 1918, had held, possession of all the shares of stock belonging to the trustees or to the beneficiaries, and there was nothing in the hands of the trustees subject to their control or subject to seizure. On January 31, 1918, Schultze, trustee, had voluntarily surrendered all the trust estate to the appellee as depositary, and on March 11, 1918, the shares of stock constituting the trust estate had been transferred to the appellee as depositary for the Alien Property Custodian. Demand upon Schultze, after he had surrendered the corpus of the trust estate and had been divested of title thereto, cannot be said to be a seizure. No demands were addressed to the appellee. It has been uniformly held that no seizure can be had without a valid demand upon the party in possession of the property. Said the court in Miller v. Rouse (D. C.) 276 F. 715:

"Normally a 'demand' should include the communication of the claim to the person against whom it is directed. Probably in section 2 of the executive order this is not its meaning; it is to be treated as a completed 'demand' when once drawn up. Yet under section 2 (c) it is only after notice that the property vests in the Alien Property Custodian. Therefore it is apparent that under the executive orders the capture is made to depend upon the service of the demand, and this conforms with the meaning of 'require' in the act itself. * * * The property does not become the 'subject' of a demand till those acts are done which would vest the property in the United States, and that, as I have said, even under the executive orders themselves, is only when the demand is served. * * * In the case of choses in action, where the property cannot be forcibly taken, notice is all that can be given, unless the enemy's debtor is himself to be seized. The analogy of garnishment is directly in point."

[2] We are of the opinion that the voluntary surrender by Schultze as trustee of the entire corpus and income of the Otto Isenberg estate was without authority of law. On January 31, 1918, there were two trustees, Schultze and Rodiek. Schultze alone made the surrender to the appellee of the shares which stood in the name of himself and his cotrustee, and on March 11, 1918, the appellee surrendered to the Kekaha Company the stock certificates and received in place thereof one certificate for 170 shares and one for 500 shares as requested by it, in its capacity as depositary for the Alien Property Custodian. This was done without authority from the Custodian. Up to that time there had been no determination that any of the beneficiaries of the Otto Isenberg trust estate were enemies, and no demand had been made for the surrender of their property. Section 7–D of the Trading with the Enemy Act (50 USCA Appendix § 7[d]; Comp. St. § 3115½d[d]) provides for voluntary surrender to the Alien Property Custodian and declares that any person not an enemy or ally of an enemy, who holds property for the benefit of an enemy, "may, at his option, with the consent of the President, pay, convey, transfer, assign, or deliver to the Alien Property Custodian said money or other property under such rules and regulations as the President shall prescribe." Rule 30 provides that the person making the surrender shall file an application with the Alien Property Custodian for consent and permit, and it authorizes the Custodian to consent and issue a permit or to withhold or refuse the same. There

was no compliance with this rule. Schultze filed no application for permission, and no permission was granted by the Alien Property Custodian. The stock certificates at that time stood in the name of the trustees, and the estate was subject to the control of the probate court.

[3] On October 31, 1918, the appellee upon its own petition and without notice to the widow or to any of the beneficiaries of the trust estate was appointed trustee of the trust formerly administered by Schultze and Rodiek, and shortly thereafter gave a bond for the faithful performance of the duties of the trust in the sum of $120,000. In thus assuming, as it did, the duties of trustee of an active trust, while at the same time discharging the duties of representative of the custodian of alien enemy funds, the appellee acted in inconsistent and conflicting capacities. As trustee, it was its duty to protect the trust and carry out its provisions. The legal title of the trust property was vested in it. Two of the beneficiaries of the trust were not enemies, but were loyal American citizens residing in the United States, and they held an interest in the shares of stock which had been set apart for the benefit of the widow during her life. The appellee had been instructed by the Custodian to be very cautious and not to recommend any bank or trust company as depositary "which may have any interest which would conflict with those of the properties deposited with it, or the good faith of the officers of which might be questioned in any manner in discharging their duties for the government." As early as September 16, 1918, the president of the appellee had been advised of the condition of the Isenberg trust and knew that to seven of the children had been distributed their distributive shares of their two-thirds of the estate, leaving two-ninths of the two-thirds in the names of Paul Otto and Dorothea, and yet in his letter to the Custodian of September 25, 1918, although he knew that no alien enemy held the legal title to any of the securities constituting the estate in trust, he represented that the widow was the owner of 500 shares of Kekaha stock, and that Paul Otto and Dorothea were each the owner of 170 shares of the Kekaha stock, and on September 26, 1918, he wrote to the Custodian, "This estate is in probate and subject to the orders of our probate court."

[4] But if it be assumed that by the demand upon the Kekaha Sugar Company of March 11, 1918, there was a valid seizure, the appellee was chargeable with notice of the nature and extent of that which was seized.

The demand was for "the right, title, and interest" of the estate of Otto Isenberg in and to certain shares of stock. In Kahn v. Garvan (D. C.) 263 F. 909, Judge Learned Hand said of the seizure there under consideration: "It did not profess to be greater than the right of the enemies as cestuis que trustent, and it did not in law change the substance, or the incidents, of the right itself, any more than if, for example, it had been an unliquidated claim for breach of contract. * * * If it be a chose in action, subject to an accounting as a condition of its assertion, he must submit to some judicial determination between himself, as captor, and the trustee as obligor."

The communications from the Custodian to the appellee gave to the latter notice that no seizure had been made of the corpus of the trust. In his letter of October 16, 1918, the Custodian wrote: "As the Otto Isenberg estate is still in the hands of the probate court, this office is only entitled to the enemy's interest when liquidated." Again, in a letter of November 8, 1920, the Custodian wrote: "No property was taken over in this trust; all of the shares being included in the reports filed by Schultze, either as guardian or trustee." Until the respective rights of the trustee and the beneficiaries were judicially determined, no rights in any particular portion of the corpus of the trust were confiscable by the Custodian, for he was not vested with title to the corpus, or to any particular portion thereof, but, if vested at all, was vested only with the right, title, and interest of the beneficiaries, and in fact the right, title, and interest of the beneficiaries was not sold. The sale was a specific sale of 500 shares of stock "owned" by the widow and 170 shares of stock formerly "owned" by Paul Otto Isenberg, and it was not a sale of shares belonging to a trust estate, for neither was the widow nor Paul Otto owner of any Kekaha shares.

[5] We think it was the plain duty of the appellee, as soon as it was appointed trustee of the Isenberg trusts, to initiate a proceeding under section 9 of the Trading with the Enemy Act (50 USCA Appendix § 9; Comp. St. § 3115½e) to recover the corpus of the estate. Section 9 of the act (50 USCA Appendix § 9; Comp. St. § 3115½e), as it then stood, provided that any one not an enemy or ally of an enemy, claiming any interest, right, or title in any money or other property so sequestered and held, might give notice of his claim and institute a suit in equity against the Custodian to abide the final decree. The commencement of such a suit

would require the Alien Property Custodian to retain the property until determination of the rights thereto. In such a final decision undoubtedly the corpus of the trusts would have been protected and the interests of the American citizens involved would have been safeguarded, and opportunity would have been afforded to segregate such property as was subject to confiscation. Central Trust Co. v. Garvan, 254 U. S. 554, 41 S. Ct. 214, 65 L. Ed. 403; Stoehr v. Wallace, 255 U. S. 239, 41 S. Ct. 293, 65 L. Ed. 604.

The Trading with the Enemy Act, § 12 (50 USCA Appendix § 12; Comp. St. § 3115½-ff), required that all moneys paid to or received by the Custodian should be deposited forthwith with the Treasurer of the United States. None of the money realized upon the sale of the shares of stock was thus deposited. On December 14, 1918, the appellee wrote to the Custodian suggesting that the proceeds of the sale should be turned over to the appellee as trustee, and by it invested in Liberty bonds; the income therefrom to be accounted for to the Custodian. The Custodian made no objection, and made no demand for the proceeds of the shares of stock belonging to the trust estate. He thus recognized that he was not concerned with the corpus of the trust estate, and was entitled only to the income thereof after liquidation. The proceeds of the sale of the 500 shares of Kekaha stock were retained by the appellee, and were never transferred to the Custodian. They were reinvested by the appellee, and they constituted a part of the trust estate when the appellee as trustee filed his principal account, the objections to which brought about the present controversy. The proceeds of the 170 shares, known as the Paul Otto shares, were also received by the appellee as trustee, and had been retained by it more than two years after the date of the sale, when, on February 4, 1921, they were forwarded to the Custodian in consequence of the latter's demand, which was made on the theory that Paul Otto had, at the time of his death, a vested interest in the principal as well as in the income, of those shares of stock. The appellee complied with the Custodian's demand without protest, and without consulting counsel or endeavoring in any way to ascertain whether or not it was its duty to retain possession of the money as part of the trust estate. On January 4, 1921, the Custodian notified the appellee that the Attorney General had decided, under the provisions of section 9 of the Trading with the Enemy Act, that the widow was entitled to the return of the property held in trust for her benefit, and instructed the appellee to deliver the same to her. The widow had made demand for the restoration of 500 Kekaha shares, and in a letter of September 20, 1921, the Custodian wrote to her attorneys the following:

"The proceeds from the sale of the shares of Mrs. Isenberg belonged to the Trent Trust Company as trustee, and were delivered to the trustee and by the trustee reinvested without instruction or limitation by this office. * * * The effect of our demand was to acquire the income payable to her as provided in the will of the decedent and in accordance with the trust established thereby. By error of the former trustee, H. Schultze, and the Trent Trust Company, acting as our depositary, the corpus was delivered to the Trent Trust Company. * * * In connection with the sale of certain shares of stock held by the Trent Trust Company as trustee of such estate and the subsequent sale thereof and the reinvestment of the proceeds, we submit that the sale and reinvestment was the act of the Trent Trust Company as trustee and not that of the Alien Property Custodian."

The letter made reference to the Custodian's letter of January 2, 1918, which, it said, "clearly shows that the Alien Property Custodian did not exercise any control over the sale or of the stocks referred to or the reinvestment of the proceeds from such sale." The sale of January 17, 1919, was subject to confirmation by the Custodian. On January 2, 1919, the Custodian wrote to the appellee reminding it that by letter of October 16, 1918, it had been advised that the Custodian was only entitled to the enemies' interest in the Otto Ernst Isenberg estate when liquidated. The appellee took no action under this intimation from the Custodian, and took no steps to withdraw the 670 shares of Kekaha stock and cancel the sale thereof as it might have done, but permitted the matter to rest until February 22, 1919, when the sale was confirmed. On January 4, 1921, the Custodian sent to the appellee a letter of the Assistant Attorney General, stating that the widow was an American citizen, and directing the appellee as depositary for the Custodian to return to her as an American citizen all money and property in its possession belonging to her, but the order was not complied with, and no property was returned to her. On August 23, 1921, the appellee cabled to the Custodian, advising it that an attorney was demanding the return of certain shares of stock of the Otto Ernst Isenberg estate, and requesting the Custodian to withhold information "pending our letter." In

the letter which followed the Custodian was informed that Kekaha shares had advanced to a price of $235 per share, and that the appellee had retained an attorney of the Honolulu bar "to represent us in any litigation which may arise in this matter. * * * We will greatly appreciate it if you will assist Judge Robertson in such manner as you may be able, and if you will kindly give out no information concerning this matter pending Judge Robertson's arrival."

[6] Whether the interests of the beneficiaries in the trust estate were at the time of the sale, vested, as held by the majority of the Supreme Court, or were contingent, the possession and enjoyment thereof was, as to the shares set apart for the widow, deferred until her death, and, as to the Paul Otto shares, was deferred until he should reach the age of 25 years. The widow was still living, and no news had then been had of the death of Paul Otto, who, it later appeared, died unmarried and without issue before he reached the age of 25. A sale of the interests of the beneficiaries could convey no title to the shares of stock. If it is true, as we hold, that neither Schultze's voluntary surrender nor the subsequent demands of the Custodian operated to vest in the Custodian the legal title to the 670 shares in dispute, the sale by the Custodian was wholly void. If, on the other hand, it is true that the surrender and the subsequent demands of the Custodian were sufficient to authorize the Custodian to deal with the property as held by enemies, the Custodian had the right to sell no more than the right, title, and interest of enemy beneficiaries in the estate. No such sale was had. The sale was of stock "owned" by the widow and stock "owned" by Paul Otto. This is shown by the correspondence and the advertisements of the sale, and the order which was sent by the Custodian to the appellee, in which the widow and Paul Otto were listed as enemies and as the owners, respectively, of 500 and 170 shares of Kekaha Sugar Company stock.

The determination of the case involves the investigation of numerous documents, some of which are conflicting and some are obscure. A number of the communications addressed to the appellee from the Custodian's office, written as they were by different assistants to the Custodian, show upon their face that the writers were not advised of the fact that the appellee was the trustee of the estate in Hawaii. In the opinion of the Supreme Court of the territory, it was recognized that in such a case the first duty of the trustee after his appointment and qualification to act was to secure the possession of the trust property and protect it from loss and injury. Said the court: "He is bound not to do anything that would place him in a position inconsistent with the interests of the trust, or which may have a tendency to interfere with his duty in discharging it. In the case at bar the first duty devolved upon the Trent Trust Company, Limited, was to resign as depositary for the Alien Property Custodian because of conflicting interests." With that expression of opinion we agree. We differ with the Supreme Court in the degree in which the trustee should be held accountable for loss to the estate. We agree that the appellee's first breach of duty was its failure to obtain possession of the estate immediately upon its appointment as trustee. It obtained possession of no part thereof until May 16, 1919, more than six months after the appointment. It was also its plain duty, we think, to institute proceedings under section 9 of the Trading with the Enemy Act to determine the rights of the beneficiaries of the trust estate.

We are of the opinion that the decision of the circuit court properly disposes of the questions at issue. The decree of the Supreme Court of the territory is reversed, and the decree of the circuit court is affirmed.