**TRENT TRUST COMPANY, LTD. et al.,**
**Appellants,**

v.

**Robert F. KENNEDY, Attorney General of the United States, as Successor to the Alien Property Custodian, Appellee.**

**No. 16460.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 9, 1961.

Decided Jan. 4, 1962.

Opinion Amended and Petition for Rehearing Denied Sept. 14, 1962.

Mr. William D. Donnelly, Bethesda, Md., for appellants.

Mr. Armand B. DuBois, Atty., Dept. of Justice, with whom Asst. Atty. Gen. William H. Orrick, Jr., was on the brief, for appellee. Mr. Morton Hollander, Atty., Dept. of Justice, also entered an appearance for appellee.

Before WASHINGTON, DANAHER and BURGER, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an alien property case. The Trent Trust Company of Honolulu, Hawaii, was held liable in 1928 to pay damages to certain German nationals for breach of trust in failing to bring suit under Section 9 of the Trading with the Enemy Act[1] to recover property which had been taken and sold by the Alien Property Custodian during World War I. The property was part of a trust under which the German nationals were beneficiaries. Isenberg v. Trent Trust Co., 26 F.2d 609 (9th Cir. 1928), on rehearing, 31 F.2d 553 (9th Cir.), cert. denied, 279 U.S. 862, 49 S.Ct. 479, 73 L. Ed. 1001 (1929).

The present suit was brought in the United States District Court for the District of Columbia in 1959. Trent Trust Company sought review of an order of the Attorney General entered in 1956, in which the latter disallowed a claim by Trent against funds of the German Government seized and held by him. Trent's claim was made under Section 34 of the Trading with the Enemy Act,[2] on the theory that Trent was a creditor of the German Government, i. e., that the latter was obligated to make Trent whole as to the damages paid by it to the trust

1. 50 U.S.C.A.Appendix, § 9.

2. 50 U.S.C.A.Appendix, § 34. Cooke Trust Company was appointed receiver of Trent Trust Company in 1932, and appears in this case in that capacity as a plaintiff-appellant.

beneficiaries. The amended complaint in the District Court says, *inter alia,* that—

"Under section 2 of the Joint Resolution Terminating the State of War, July 2, 1921, 42 Stat. 105, which section is recited in the Treaty of Berlin of August 25, 1921, proclaimed November 14, 1921, 42 Stat. 1939, and particularly under Articles I and II(1) of said Treaty which adopted by reference certain provisions of the Treaty of Versaille[s] (Treaty Series No. 658, Sen.Doc. 348, 67th Cong., 1st Sess.) Part X, Section IV, Article 297(d) and paragraphs 1, 2 and 3 of Annex to Section IV, the German Government itself in effect issued a valid insurance policy to any American national that he would not be held liable by a German national for any act or omission in compliance or in accordance with exceptional war measures which had as an object the seizure, or use of, or interference with enemy assets." [3]

In March, 1961, the District Court granted the Government's motion for summary judgment. This appeal followed.

We need not spell out the learned arguments made by appellants and appellee for and against the claim that the Treaty of Versailles and the Treaty of Berlin created an obligation on the part of the German Government to indemnify American nationals for damages suffered by the latter as a result of suits brought by German nationals under circumstances similar to those presented in the 1928 litigation. We do not reach that issue here. Trent's position has as its inevitable corollary that the Ninth Circuit's decision in the Isenberg case was erroneous, in that no liability should have been attached by an American court in such a suit by German nationals. But Trent made no such claim in the 1928 litigation until after the Ninth Circuit had rendered its decision. Then, in a petition for certiorari to the Supreme Court, Trent claimed that the Ninth Circuit had erred (among other things) in disregarding Article 297 of the Treaty of Versailles. (No. 811, October Term, 1928) Certiorari was denied. Such denial, of course, is not to be taken as passing on the merits of any of the contentions advanced in the petition for certiorari. Thus, to determine the basis on which Trent was held liable to the trust beneficiaries, we must go to the opinions of the Ninth Circuit, originally and upon rehearing. The Ninth Circuit, on rehearing, said:

"Speaking generally, the ground or basis of the decision adverse to the appellee was that it was its plain duty, upon its appointment as trustee of the Isenberg trusts, to institute proceedings under the Trading with the Enemy Act (50 U.S.C.A. Appendix) for the recovery of the shares of stock here involved, and that its failure so to do resulted in the sale of the stock by the Alien Property Custodian, and its consequent loss to the cestuis que trust. As bearing upon the question of damages, it is now contended that this court did not find that the conduct of the appellee was fraudulent. It will be conceded that its conduct was not so characterized in the

---

3. Principal reliance is placed by appellant on Part 2 of the Annex to Article 297 of the Treaty of Versailles, Section IV (Treaty Series No. 658, Sen.Doc. 348, 67th Cong., 4th Sess., at p. 3465), reading as follows:

"No claim or action shall be made or brought against any Allied or Associated Power or against any person acting on behalf of or under direction of any legal authority or Department of the Government of such a Power by Germany or by any German national wherever resident in respect of any act or omission with regard to his property, rights or interests during the war or in preparation for the war. *Similarly no claim or action shall be made or brought against any person in respect of any act or omission under or in accordance with the exceptional war measures, laws, or regulations of any Allied or Associated Power.*" (Emphasis supplied.)

former opinion, nor need it be so characterized at this time; but it was found that, in assuming to act as agent or depository for the Alien Property Custodian and as trustee for the alien enemies, the appellee acted in inconsistent and conflicting capacities; that it was and had been the policy of the Alien Property Custodian not to seize or sell the corpus of the estates of alien enemies held in trust by American trustees; that this policy was well known to the appellee; that the appellee did not apply to the appointing court for instructions as to its duty, nor did it seek advice from an independent source. Whether such a course of conduct on the part of a trustee was fraudulent or not, it constituted a plain breach of trust, and the rights and obligations of the parties must be measured accordingly. The controlling facts were that the trustee had willfully and negligently failed to reduce the trust property to possession, and had suffered it to be sold by another, to the detriment of the beneficiaries. Under these facts the trial court held that the beneficiaries were entitled to a restoration of the trust property in kind at the termination of the trust, or to its value as of that date, in case restoration could not be had, together with all accrued dividends and interest." 31 F.2d 553 at 554–55.

The decision was thus based on the conduct of Trent as a trustee, applying ordinary principles of law and equity. Whether or not the Ninth Circuit properly imposed liability on Trent is not and cannot be in issue here. It is enough to note that Trent was not held liable by reason of any provision of the Trading with the Enemy Act, or other wartime regulation. Under the circumstances of the case, we must conclude that there was no "claim or action," and no resulting liability, against an Ameri-

can defendant "in respect of any act or omission under or in accordance with the exceptional war measures, laws, or regulations of any Allied or Associated Power," within the meaning of Part 2 of the Annex to Article 297 of the Treaty of Versailles.[4]

For these reasons, without reaching the other contentions of the parties, the judgment of the District Court will be

Affirmed.